D. GILL SPERLEIN, SBN 172887
THE LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, CA 94114
Telephone: (415) 404-6615
Facsimile:  (415) 404-6616
gill@sperleinlaw.com

LAWRENCE G. WALTERS, FL SBN 776599 (*pro hac vice pending*)
WALTERS LAW GROUP
195 West Pine Ave.
Longwood, FL  32750
Telephone: (407) 975-9105
larry@firstamendment.com

Attorneys for Plaintiffs
OXANE "GYPSY" TAUB and GEORGE DAVIS

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| OXANE "GYPSY" TAUB and GEORGE DAVIS,<br>          Plaintiffs,<br>     v.<br><br>CITY and COUNTY of SAN FRANCISCO,<br>          Defendants. | Case № 3:12-cv-05841-EMC (NJV)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:  September 11, 2014<br>Time:  1:30 p.m.<br>Ctrm: 5, 17th Floor |

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET    SAN FRANCISCO, CA 94102    TEL: 415-404-6615    FAX: 415-404-6616

# TABLE OF CONTENTS

Table of Authorities ............................................................................................ i

**INTRODUCTION** ............................................................................................. 1

**I.   UNDER FEDERAL NOTICE PLEADING STANDARDS, PLAINTIFFS HAVE STATED VALID CLAIMS ON WHICH RELIEF CAN BE GRANTED** ...................... 1

    **A.  Standard of Review** ............................................................................... 1

    **B.  Requests for Judicial Notice** ............................................................... 2

**II.  IF IN PRACTICE THE ORDINANCE DOES NOT ALLOW AN EXCEPTION FOR INDIVIDUALS ENGAGED IN CORE POLITICAL SPEECH, THE COURT SHOULD FIND THAT THE ORDINANCE IS UNCONSTITUTIONAL AS APPLIED** ...................................................................................................... 3

**DISCUSSION**

**I.   PLAINTIFFS PROPERLY ALLEGE THAT THEIR NUDITY IS AN INTEGRAL PART OF FIRST AMENDMENT PROTECTED CORE POLITICAL SPEECH.** ....... 4

    **A.  In the Court's Own Words, "Context Matters!"** ...................................... 5

    **B.  Courts Have Routinely Held That Expressive Nudity Is Protected Speech** .......... 6

    **C.  Plaintiffs' Activity As Alleged Is Clearly Protected Speech** ...................... 7

**II.  THE SECOND AMENDED COMPLAINT, TAKEN AS A WHOLE, ALLEGES SUFFICIENT FACTS TO SUPPORT A CLAIM THAT DEFENDANTS ENGAGED IN VIEWPOINT DISCRIMINATION.** ................................................. 8

**III. PLAINTIFFS PLEAD FACTS SUFFICIENT TO OVERCOME A MOTION TO DISMISS UNDER *O'BRIEN*** .............................................................................. 12

    **A.  Because San Francisco Enacted the Legislation in Part to Address Primary Effects of Expressive Activity, and because There Is an Allegation of Viewpoint Discrimination, Plaintiffs' As-Applied Challenge Should Be Analyzed under *Texas v. Johnson*, Not *O'Brien*** .......................................... 12

    **B.  Even if the Court Ultimately Applies the O'Brien Test, Plaintiffs Have Sufficiently Pled Facts to Overcome a Motion to Dismiss** ............................ 15

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102    FAX: 415-404-6616
TEL: 415-404-6615

-ii-

1. San Francisco's Position That the Ordinance Protects the Public from Being Unwillingly or Unexpectedly Exposed to the Genitals of Others is Not an Important or Substantial Governmental Interest...... 15

2. As applied to Plaintiffs' Political Speech, the Ordinance Is Not Sufficiently Narrowly Tailored and Does Not Leave Sufficient Alternative Avenues of Communication. ................................................. 16

IV.  DEFENDANTS PLACED A PRIOR RESTRAINT ON PLAINTIFFS' SPEECH....... 18

V.  DEFENDANTS ENFORCED THE ORDINANCE IN A MANNER THAT COMPELLED PLAINTIFFS TO PRESENT A MESSAGE CONTRARY TO THE MESSAGE THEY WISH TO PRESENT ................................................... 23

VII. DEFENDANTS VIOLATED PLAINTIFFS RIGHT TO PETITION........................... 23

VII. THE ORDINANCE IS VAGUE AS APPLIED TO PLAINTIFFS ............................... 24

CONCLUSION .............................................................................................................. 25

The Law Office of D. Gill Sperlein
345 Grove Street
San Francisco, CA 94102
Tel: 415-404-6615   Fax: 415-404-6616

-iii-

# Table of Authorities

## CASES

*Admiral Theatre v. City of Chicago*, 832 F. Supp. 1195 (N.D. Ill. 1993) ............................... 23

*Alexander v. United States*, 509 U.S. 544 (1993) ................................................... 20, 22

*Alexis, Inc. v. Pinellas County*, 194 F. Supp. 2d 1336 (M.D. Fla. 2002)............................ 22

*Attwood v. Purcell*, 402 F. Supp. 231 (D. Ariz. 1975)............................................. 22

*Baldwin v. Redwood City*, 540 F.2d 1360 (9th Cir. Cal. 1976) ................................... 19

*Bantam Books, Inc. v. Sullivan,* 372 U.S. 58 (1963)............................................... 20

*Bell Atlantic. Corporation. v. Twombly*, 550 U.S. 544 (2007) ........................... 1, 2, 6

*Berg v. Health & Hospital Corporation of Marion County, Indianna*, 865 F.2d 797 (7th Cir. 1989................................................................................ 20

*Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. Wash. 2009)................................. 20

*Boos v. Barry*, 485 U.S. 312 (1988) ...................................................... 13

*Bush v. San Diego*, 2010 Lexis 57922 (S.D.Cal, June 11, 2010) ........................... 14, 15

*City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000)............................................. 12, 14

*City of Los Angeles v. Alameda Books*, 535 U.S. 425 (U.S. 2002)............................ 3

*City of Los Angeles v. Heller,* 475 U.S. 796 (1986)....................................... 9

*Cohen v. California*, 403 U.S. 15 (1971)................................................. 14

*Conley v. Gibson*, 355 U.S. 41 (1957) ...................................................... 1

*Cuviello v. City & County of San Francisco*, 940 F. Supp. 2d 1071 (N.D. Cal. 2013) ....... 9, 22

*DeWeese v. Town of Palm Beach*, 812 F.2d 1365 (11th Cir. 1987) ....................... 6

*Duvallon v. State*, 404 So.2d 196 (Fla. 1st DCA 1981)..................................... 7

*Edgerly v. City & County of San Francisco*, 713 F.3d 976 (9th Cir. 2013) ................. 11

*Erickson v. Pardus,* 551 U.S. 89 (2007) .................................................... 21

*Erznoznik v. Jacksonville*, 422 U.S. 205 (1975) ...................................... 14

*Frisby v. Schultz,* 487 U.S. 474 (1988) ........................................................................ 18

*Furfaro v. City of Seattle*, 984 P.2d 1055 (Wash.Ct.App. 1999) ............................... 22

*FW/PBS v. City of Dallas*, 493 U.S. 215 (1990) ............................................................ 6

*Giebel v. Sylvester,* 244 F.3d 1182 (9th Cir. 2001) ...................................................... 10

*Gilligan v. Jamco Develop. Corp.*, 108 F3d 246 (9th Cir. 1997) .............................. 1

*Grosjean v. American Press Company*, 297 U.S. 233 (1936) ...................................... 14

*Hoye v. City of Oakland*, 653 F.3d 835 (9th Cir. Cal. 2011) ........................... 8, 9, 10

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) .......................................................... 2

*Lawrence v. Texas*, 539 U.S. 558 (U.S. 2003) ............................................................. 15

*Martin v. Struthers*, 319 U.S. 141 (1943) .................................................................... 14

*Menotti v. City of Seattle*, 409 F.3d 1113 (9th Cir. Wash. 2005) ........................ 9, 10

*Moss v. United States Secret Service,* 572 F.3d 962 (9th Cir. 2009) ......................... 10

*Mullis v. U.S. Bankr. Court,* 828 F.2d 1385 (9th Cir. 1987) ....................................... 2

*Nadell v. Las Vegas Metropolitian Police Department*, 268 F.3d 924 (9th Cir. 2001) ........... 10

*Pearson v. Callahan,* 555 U.S. 223 (2009) .............................................................. 9, 10

*Perry Education Association v. Perry Local Educators' Association,* 460 U.S. 37 (1983) .... 10

*Pittsburgh Press Company v. Pittsburgh Commisson on Human Relations*, 413 U.S. 376 (1973) ..................................................................................................................... 20

*Red Lion Broadcasting Company v. Federal Communications Commission*, 395 U.S. 367 (1969) ..................................................................................................................... 14

*Rowe v. Education Credit Management Corporation*, 559 F.3d 1028 (9th Cir. 2009) ............. 2

*Salem Inn, Inc. v. Frank*, 501 F.2d 18 (2d Cir. 1974) .................................................. 8

*Scheuer v. Rhodes,* 416 U.S. 232 (1974) ........................................................................ 1

*Smith v. County of Los Angeles*, 24 Cal. App. 4th 990, 29 Cal. Rptr. 2d 680 (Cal. App. 2d Dist. 1994) ............................................................................................................. 7

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975) ................................. 6, 20, 22

*T.A. Wyner v. Struhs*, 254 F.Supp.2d 1297 (S.D. Fla. 2003) ..................................................... 6

*Texas v. Johnson*, 491 U.S. 397 (1989) .......................................................................... 12, 14

*United States v. O' Brien*, 391 U.S. 367 (1968) ...................................................... 12

*United States. v. LSL Biotechnologies*, 379 F.3d 672 (9th Cir. 2004) ...................................... 2

*Vlasak v. Superior Court of Caifornia*, 329 F.3d 683 (9th Cir. Cal. 2003) .............................. 8

*Ward v. Rock Against Racism*, 491 U.S. 781 (U.S. 1989) ................................................ 22

*World Wide Video of Washington, Inc. v. City of Spokane*, 368 F.3d 1186 (9th Cir. Wash. 2004) ............................................................................................... 3

## STATUTES

42 U.S.C. §1988 ..................................................................................................... 15

Federal Rule of Civil Procedure 12(b)(6) .................................................................... 1

Federal Rule of Civil Procedure 8(a) ......................................................................... 1

Federal Rule of Evidence 201(b) ............................................................................... 2

San Francisco Parks Code §7.02(j) ........................................................................... 21

San Francisco Police Code §154 .......................................................................... passim

San Francisco Police Code §366(e) ........................................................................... 21

San Francisco Police Code §367(f) ............................................................................ 21

San Francisco Police Code §367(g) ........................................................................... 21

San Francisco Police Code §369 ............................................................................... 21

San Francisco Police Code §370 ............................................................................... 21

San Francisco Port Code §6.2(I) ............................................................................... 21

San Francisco Transportation Code §6.11 .................................................................. 17

The Law Office of D. Gill Sperlein
345 Grove Street
San Francisco, CA 94102
Tel: 415-404-6615    Fax: 415-404-6616

In spite of the significant factual foundation established by the allegations in the Second Amended Complaint (hereinafter SAC), which clearly indicate Defendants routinely and significantly curtailed Plaintiffs' First Amendment protected activity, Defendants filed a routine motion to dismiss, ignoring federal pleading standards, mischaracterizing the SAC, and misstating operative law. Accordingly, the Court should deny Defendants' Motion to Dismiss in its entirety.

## I. UNDER FEDERAL NOTICE PLEADING STANDARDS, PLAINTIFFS HAVE STATED VALID CLAIMS ON WHICH RELIEF CAN BE GRANTED.

Nowhere in Defendants' Motion and Memorandum do they set forth the legal standard for evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In fact, Defendants entirely ignore the standard and use the motion as an attempt to prematurely litigate the matter on the merits, with rampant citation to extraneous facts.

### A. Standard of Review

Generally, plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The purpose of rule 8(a)(2) is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In reviewing the sufficiency of a complaint, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). *Gilligan v. Jamco Develop. Corp.*, 108 F3d 246, 249 (9th Cir. 1997) ("The motion to dismiss for failure to state a claim is viewed with disfavor and rarely granted"). The SAC goes well beyond providing the required short and plain statement of each claim showing that

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102
TEL: 415-404-6615    FAX: 415-404-6616

Plaintiffs are entitled to relief and providing Defendants fair notice of what the claims are and the grounds upon which they rest. *See, Twombly.*

When evaluating a motion to dismiss, a court must accept "all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)). The determination of a motion to dismiss should be based on the "four corners" of the complaint, and must not make findings on controverted matters. *U.S. v. LSL Biotechnologies*, 379 F.3d 672, 700 (9th Cir. 2004).

### B. Requests for Judicial Notice

While it is permissible to consider documents subject to judicial notice in conjunction with a motion to dismiss, here Defendants impermissibly attempt to introduce material not properly admissible pursuant to judicial notice. *Mullis v. U.S. Bankruptcy. Court,* 828 F.2d 1385, 1388 (9th Cir. 1987). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Plaintiffs do not contest judicial notice of decisions from other courts or the original Complaint. (Defs.' Mot. for Judicial Ntc., Dkt. No. 87, Exhibits A, B and E, respectively.) However, the Court should deny the request, and strike the incident reports and other related documents, attached as Exhibits G and H, because the officers were not subject to cross examination, their inclusion is an improper attempt to litigate controverted facts. Plaintiffs do not dispute the applications as Exhibit F were filed, but have not had an opportunity to take discovery on the facts surrounding the creation of the application form or the submission or rejection of the completed applications. Nor have Plaintiffs taken discovery to compare the applications to other submitted, approved, or rejected applications. Without context, the complete meaning is not subject to

The Law Office of D. Gill Sperlein
345 Grove Street   San Francisco, CA 94102   Fax: 415-404-6616
Tel: 415-404-6615

determination in a Rule 12(b)(6) proceeding, and thus their consideration is improper.  With regard to Exhibit C, the transcript of the Board of Supervisors City Operations and Neighborhood Services Committee, Plaintiffs recognize the Court previously ruled on the appropriateness of taking judicial notice as part of the legislative history of §154.  However, an important distinction must be made between establishing facts justifying initial enactment of an ordinance by the City, as compared to defending such an ordinance in the face of a constitutional challenge.  While the City may rely on the facts presented at a municipal hearing as a basis for enacting legislation to address secondary effects, if Plaintiffs demonstrate that their First Amendment activity has been curtailed under the ordinance, they must be given the opportunity to challenge the City's findings, after which, the burden shifts to the City to justify the ordinance.  *City of L.A. v. Alameda Books*, 535 U.S. 425, 444-453 (U.S. 2002)(Justice Kennedy plurality opinion); *World Wide Video of Wash., Inc. v. City of Spokane*, 368 F.3d 1186, 1193 (9th Cir. Wash. 2004).  Accordingly, the Court should not rely on facts presented in the transcript as a final adjudication of the facts supporting a finding that public nudity creates secondary effects or that §154 ameliorates any such effects.  Plaintiffs are entitled to a trial on those issues, and the admission of both factual and expert testimony relating to secondary effects.  *Alameda Books*, supra.

## II.  IF IN PRACTICE THE ORDINANCE DOES NOT ALLOW AN EXCEPTION FOR INDIVIDUALS ENGAGED IN CORE POLITICAL SPEECH, THE COURT SHOULD FIND THAT THE ORDINANCE IS UNCONSTITUTIONAL AS APPLIED

Although the Court initially dismissed Plaintiffs' facial challenge to §154, it did so on the representation that individuals could apply for permits which would bring them within the "permitted event exemption" of §154 and that the permitting ordinances did not vest undo discretion upon the SFPD.  (Video Recording of Mot. Hearing, Dkt. No. 23, http://www.uscourts.gov/Multimedia/Cameras/NorthernDistrictofCalifornia.aspx?video_uuid=rao8f6td&categoryId=49435 (hereinafter Mot. Hearing Video) at 28:55 to 32:33 min.)  While S.F. Police Code §154 does not directly

reference specific permitting code sections, it references them generally by stating that permitted events are exempt from the ordinance. Individuals wishing to engage in nude expression are left to determine which permitting codes they must comply with.

Plaintiffs alleged, and intend to further develop through discovery, that in practice the City has a great deal of discretion in issuing permits, that the permit process is cumbersome, burdensome, and vague, that it is nearly impossible for anyone who wishes to engage in nude expression to obtain a permit, and that the City abused its discretion in order to deny permits to Plaintiffs. For example, the SFPD denied one of Plaintiffs' permit applications stating, "Denied - Northern Station denies the permit application for Parade and Rally. Public nudity violates SF Police Code 154. Unfettered nudity interferes with the rights of all persons to use and enjoy public spaces, and harms members of the public who are unwillingly or unexpectedly exposed to such conduct." (SAC at ¶55.) Under this stated policy, no permits can issue where an application suggests nudity will occur, thereby rendering meaningless the permitted event exemption. Since the entire permitting scheme is incorporated into §154 by reference, the permitting scheme, and the manner in which the City administers it, must be more closely examined before determining whether the ordinance allows sufficient alternative channels for symbolic nude speech. If the Court finds that the City administers its permitting codes in a manner that renders meaningless the permitted event exemption that saved the ordinance from a facial challenge, the ordinance is unconstitutional as applied.

## DISCUSSION

### I.  PLAINTIFFS PROPERLY ALLEGE THAT THEIR NUDITY IS AN INTEGRAL PART OF FIRST AMENDMENT PROTECTED CORE POLITICAL SPEECH

While various courts may have held the state of simple nudity is not expressive activity, nudity has been used to express ideas for centuries. Sassetta's masterpiece, the altarpiece for San Francesco in Borgo Sansepolcro, depicts the moment Saint Francis renounced his father by

symbolically removing in public the rich clothes his father gave him. In the 11th Century Lady Godiva reportedly rode naked through the streets of Coventry to gain a remission on the oppressive taxation imposed by her husband on his tenants.[1] The Doukhobors, a religious group of Russian Origin who rejected Russian Orthodox priests, icons, and all associated church ritual, engaged in mass nudism as a means of protest in the early 20th Century. See, http://www.doukhobor.org/Piers.htm. In 2011 animal rights activists of the AnimaNaturalis international staged a demonstration in which men and women covered in red paint resembling blood, lay down and curled up against each other in the middle of the Plaza de Espana to protest animal cruelty. See, http://cryptome.org/info/nudity-protests/nudity-protests.htm. That same year, naked protestors entered Speaker John Boehner's office on Capitol Hill to protest cuts to HIV/AIDS funding. See, http://www.nydailynews.com/news/politics/aids-activists-arrested-nude-protest-boehner-office-article-1.1208955. In 2012, John E. Brennan striped naked at Portland International Airport as a protest against airport security procedures. See, http://www.oregonlive.com/portland/index.ssf/2012/07/portlands_airport_stripper_joh.html. Nudity has long been an important, meaningful, and effective way of symbolically communicating ideas, and the nudity at issue in this case is distinguishable from the decisions holding that mere nudity, unaccompanied by any message, is unprotected expression. When given careful examination of the real life circumstances, urban nudity of the type practiced by the Plaintiffs is more akin to wearing black arm-bands, burning draft cards, or burning a flag. The Court should reject Defendants' unsubstantiated declaration that Plaintiffs' nudity is not expressive and therefore not entitled to *any* First Amendment protection.

---

[1] Historians generally agree that the Lady Godiva story was merely a legend, but even the enduring myth of Lady Godiva evidences an understanding that nudity can be a powerful for of expression and protest. See, http://www.bbc.co.uk/history/historic_figures/godiva_lady.shtml.

### A. In the Court's Own Words, "Context Matters!"

The Court acknowledged that the context of Plaintiffs' nudity will determine whether the nudity is expressive activity subject to First Amendment protection. In the words of the Court, "context matters!" (Mot. Hearing Video at 49:54-50:04 min.) The Court later expressed its belief that an as applied challenge will be "context sensitive." (Order Grant'g Defs.' Mot. to Dismiss. Dkt. No. 26, 8:1.) Similarly, the Court implicitly acknowledged that in certain cases nudity combined with other facts could express ideas that might be impermissibly restrained by S.F. Police Code §154. (Order Den. Pls.' Application for T.R.O., Dkt. No. 36 at 2:22-3:5.) The SAC makes clear that Plaintiffs' nudity is integral to their speech and their message. Through the discovery process a complete picture of each of the relevant events and the relationship between Plaintiffs' nudity and their messages will become evident. It is neither appropriate nor necessary for Plaintiffs to describe in detail the entire context at the pleadings stage of this litigation. *Twombly*, supra. Plaintiffs' only obligation, is to put Defendants on notice that their nudity is an essential part of their expression. *Id*.

### B. Courts Have Routinely Held That Expressive Nudity Is Protected Speech

Defendants categorically state, "public nudity is not entitled to protection under the First Amendment." (Defs.' Mot. to Dismiss SAC, Dkt. No. 86 at 4:19-20**.**) No Court has ever held that public nudity is categorically excluded from First Amendment protection; courts have routinely held the opposite. Historically, the United States Supreme Court along with state and federal courts, have recognized that expressive conduct involving nudity is afforded full First Amendment protection. *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 550, 557-58 (1975) (affording protection to nudity during performance of the musical, "Hair"); *FW/PBS v. City of Dallas*, 493 U.S. 215 (1990) (addressing, *inter alia,* nudity in adult entertainment facilities); *T.A. Wyner v. Struhs*, 254 F.Supp.2d 1297 (S.D. Fla. 2003) (recognizing expressive elements of "living nude peace symbol" demonstration); *DeWeese v. Town of Palm Beach*, 812 F.2d 1365 (11th Cir. 1987) (invalidating as

unconstitutional ordinance banning topless public appearances as not rationally related to any legitimate state interest); *Smith v. County of Los Angeles*, 24 Cal. App. 4th 990, 999, 29 Cal. Rptr. 2d 680, 684 (Cal. App. 2d Dist. 1994) (nude dancing); *Duvallon v. State*, 404 So.2d 196, 197-98 (Fla. 1st DCA 1981) (vindication of First Amendment rights for woman protesting official corruption by exposing breasts and backside).

### C. Plaintiffs' Activity As Alleged Is Clearly Protected Speech

In the SAC, Plaintiffs alleged that both Plaintiffs are well known locally, nationally, and even internationally for their nude activism. While nudity *per se* may not be expressive activity, the association of these Plaintiffs with advocacy for body acceptance on its own may render their simple public nudity expressive conduct worthy of First Amendment protection. Plaintiffs are so well known and so closely associated with their causes, that whenever they disrobe in public, their nudity alone is understood to be a political statement that the human body is beautiful and that the government should not force individuals to express shame in their bodies by prohibiting nudity. Plaintiffs' writings, speeches, interviews, television shows, books, and past public appearances can create the required context even when not displayed contemporaneously with their public nudity. SAC ¶¶19 and 20. Again, this Court has suggested that in some contexts even simply walking down the street naked might convey a message likely to be understood by those who viewed it. "Even if a person intended to convey a particular message simply by walking in public nude, the likelihood is far from 'great that the message would be understood by those who viewed it,' *at least absent any other context to suggest that the nudity is intended to convey a particular message*.") (Order Granting Mot. to Dis., Dkt. No. 26 at 10:13-15, emphasis added.)

This idea is not revolutionary. Courts ruling on the constitutionality of nude dancing have routinely held that nude dancing is inherently expressive with no further inquiry as to how the dance might be expressive or how nudity relates to the expressive activity. It seems to make no difference if

-7-

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102
TEL: 415-404-6615   FAX: 415-404-6616

the dancing is part of a ballet, a strip tease, or the Hokey Pokey. *Salem Inn, Inc. v. Frank*, 501 F.2d 18, 21 n.3 (2d Cir. 1974) *aff'd* 422 U.S. 922 (1975).("... while the entertainment afforded by a nude ballet at Lincoln Center to those who can pay the price may differ vastly in content (as viewed by the judges) or in quality (as viewed by critics), it may not differ in substance from the dance viewed by the person who, having worked overtime for the necessary wherewithal, wants some 'entertainment' with his beer or shot of rye.")  Surely, if adding dance in combination with nudity automatically renders the nudity expressive, then a history of political activism advocating body acceptance combined with removing one's clothes on a public street must also be considered expressive.

However, the Court need not go so far in order to conclude Plaintiffs have stated valid claims, because the facts alleged in the SAC establish that Plaintiffs' nudity *was* accompanied by speeches, signs, and body painting, and took place at political rallies that were clearly designed to convey Plaintiffs' messages of body acceptance. *Vlasak v. Superior Court of Cal.*, 329 F.3d 683, 691, (9th Cir. Cal. 2003) (passersby would understand the purpose of speaker's display of a bull hook because, speaker stood with the bull hook in one hand and pictures in the other showing the hook being used on elephants - speaker's message blended the physical demonstration of the hook with its photographic depiction.)

## II.    THE SECOND AMENDED COMPLAINT, TAKEN AS A WHOLE, ALLEGES SUFFICIENT FACTS TO SUPPORT A CLAIM THAT DEFENDANTS ENGAGED IN VIEWPOINT DISCRIMINATION

In *Hoye* the Ninth Circuit recognized that as-applied challenges may be raised even when an ordinance is facially constitutional.  Such challenges stem from two principles: "that government may not favor speakers on one side of a public debate, and that government must not substantially foreclose, as a practical matter, speakers' ability to communicate their message." *Hoye v. City of Oakland*, 653 F.3d 835, 849, (9th Cir. Cal. 2011).  The second principle is clearly at play in this action, since the Defendants' enforcement of §154 against Plaintiffs forecloses all meaningful

opportunity to communicate their message. The first principle mentioned by the court in *Hoye* is also in play as addressed in Count Four of the SAC, and §II of Defendants' Memorandum[2].

Defendants contend that the Court should dismiss Plaintiffs' claim for viewpoint discrimination because the Ninth Circuit analyses such claims as selective enforcement equal protection claims and Plaintiffs fail to allege facts to support such a claim. Defendants are mistaken on both counts[3]. The Ninth Circuit allows for as-applied, First Amendment viewpoint discrimination claims and the SAC taken as a whole alleges sufficient facts to support the claim and put Defendants on notice thereof.

Although the court stated in *Hoye* that the Ninth Circuit *generally* applies an Equal Protection paradigm when evaluating selective enforcement claims, it did not hold that the Circuit exclusively employs an Equal Protection selective enforcement analysis or that it is not proper in to employ a First Amendment viewpoint discrimination analysis.[4] The court in *Hoye* specifically cited *Menotti v. City of Seattle*, a case in which the Ninth Circuit applied a First Amendment selective enforcement analysis. *Menotti v. City of Seattle*, 409 F.3d 1113, 1146, (9th Cir. Wash. 2005). This Court has also recognized an applied First Amendment viewpoint discrimination analysis. *Cuviello v. City & County of San Francisco*, 940 F. Supp. 2d 1071, 1084 (N.D. Cal. 2013) (Chen, J.) (Citing, *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) and *Pearson v. Callahan,* 555 U.S. 223, 232 (2009).

---

[2] Defendants address Count Four before turning to the other counts in their Memorandum. For the convenience of the Court, Plaintiffs follow the same order and outline numbers as the Defendants' Memorandum.

[3] Of course, even if Plaintiffs are not able to prove selective enforcement after discovery, "[i]nadequate evidence of the City's alleged discriminatory enforcement of [an] ordinance does not defeat [an] as-applied challenge. *Foti v. City of Menlo Park*, 146 F.3d 629, 635, (9th Cir. Cal. 1998).

[4] Defendants argue that Plaintiffs cannot prove a selective enforcement equal protection claim because they cannot demonstrate "comparables." Indeed, in a case where there are multiple sides to the issue and where the nature of the challenged ordinance renders it unlikely that the defendant will have occasion to enforce it against individuals on the 180 degree side of the Plaintiffs' position, there is all the more reason for analyzing the case under First Amendment view point discrimination instead of selective enforcement equal protection. *See, e.g. Hatcher v. Desoto County Sch. Dist. Bd. of Educ.*, 939 F. Supp. 2d 1232 (M.D. Fla. 2013) (Complaint stated a First Amendment claim even though it did not state an Equal Protection claim because of lack of "comparables")

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102    FAX: 415-404-6616
TEL: 415-404-6615

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET   SAN FRANCISCO, CA 94102   FAX: 415-404-6616
TEL: 415-404-6615

"'[V]iewpoint discrimination' occurs when the government prohibits 'speech by particular speakers,' thereby suppressing a particular view about a subject." *Giebel v. Sylvester,* 244 F.3d 1182 (9th Cir. 2001) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 59 (1983) (Brennan, J. dissenting)). "To prevail in a viewpoint discrimination claim, a plaintiff must establish that the government took action against it "because of not merely in spite of" its message. *Pearson* at 232, citing *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 970 (9th Cir. 2009) (Moss I). In other words, Plaintiffs must show that the "discriminatory enforcement of a speech restriction" was the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Menotti* , 409 F.3d at 1147 (Citations omitted).

There are three ways to show a policy or custom of a municipality: (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Ulrich*, 308 F.3d at 984-85 (internal quotation marks and citations omitted). The Ninth Circuit has held that a municipal policy "may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001) (internal quotation marks and citation omitted). These are fact intensive inquiries that the Court should permit Plaintiffs to flesh out through discovery. In fact, the inappropriateness of eliminating this count by means of a motion to dismiss is highlighted by the fact that the trial court's ruling in *Hoye* was in the context of a summary judgment motion and the evidence ultimately relied upon was gathered during discovery, including "an Oakland Police Department training video, a Police Department training bulletin, and the deposition of an Oakland Police Department captain..." *Hoye*, 653 F.3d at 849. It is evident that Plaintiffs would not have access to these materials prior to discovery. Still, Plaintiffs are aware of some relevant facts and have alleged them in the SAC.

Under Count IV of the SAC at ¶95, Plaintiffs "incorporate by reference all preceding paragraphs." Taken as a whole, the SAC sets forth allegations, which, if true, are sufficient to establish an as-applied viewpoint discrimination First Amendment challenge. Plaintiffs alleged that the Defendants denied their parade permit applications on pretext, inherently suggesting an impermissible motive for the denial. (SAC at ¶15.) Plaintiffs applied for at least eight permits. (SAC at ¶38-63.) Each time the SFPD ignored or rejected their permit applications with varying excuses, never suggesting how Plaintiffs might correct any deficiencies. (*Id.*) While this may not be a requirement under the permitting statutes, it nonetheless evidences the SFPD's desire to prevent Plaintiffs from obtaining a permit and the government's hostility towards Plaintiffs' message. SFPD was so intent on preventing Plaintiffs from engaging in symbolic nude speech that they issued citations, even when Plaintiffs were clearly engaged in political protests. Large numbers of police officers were present at these events including the Chief of Police. (SAC ¶32.) Also, the SFPD issued citations against Plaintiffs even when their activity clearly fell within the "permitted event exception." (SAC at ¶¶31, 64-72.) At some events, SFPD even took Plaintiffs into custodial arrest for violations without providing them the opportunity to sign a promise to appear citation even though California state law prohibits arrests for infractions. (SAC at ¶32.) *Edgerly v. City & Cnty. of San Francisco*, 713 F.3d 976 (9th Cir. 2013).

Plaintiffs alleged by contrast that SFPD officers were present during World Naked Bike Ride Events, that no permits were issued for the events, and that no citations were ever issued against participants in these events. (SAC at ¶75.) Defendants suggests in their memorandum that Plaintiffs should have alleged the police did not know the riders were naked even though they were present. It is implied and seems obvious to Plaintiffs that a police officer in the presence of a large group of naked people riding bicycles during an event called World Naked Bike Ride would be aware that the individuals were naked. However, in a city with a powerful bicyclist lobby, the SFPD chose not to enforce the ban against these groups for impermissible reasons including viewpoint discrimination. Discovery will seek daily police briefings discussing the various events and official policies with regard to enforcement, to bolster Plaintiffs' claims.

The Operations and Neighborhood Services Committee transcript suggests Defendants are engaged in selective enforcement and that the policy comes from the highest sources in City government. All public discourse prior to the enactment of §154, including those in the hearing transcript, focused entirely on a group of nudists who previously gathered at Jane Warner Plaza. (Defs' Mot. for Jud. Not., Ex. D, *passim*.) Plaintiffs belonged to this group of nudists prior to enactment of §154 and spoke against enactment of the legislation at the Committee hearing. (*Id.* at 11:5-12:5, 23:22-24:20.) The individuals cited after enactment of the ordinance consist predominantly of those same individuals or their supporters. (SAC at ¶98.) At the hearing, speaking about the demonstrations by the politically powerful World Naked Bike Ride and Critical Mass, Supervisor Scott Wiener stated, "[a]lthough technically illegal, the city allows them to happen anyway, so I don't think that if one were to go after Critical Mass, there would be many ways to do it other than nudity. But we don't." (*Defs' Mot. for Jud. Not.*, Ex. D, 48:5-11.) From the very beginning, the City only intended to enforce the statute against the relatively politically powerless Castro nudists, while leaving unmolested other groups using nudity to express other ideas. Whether the various groups share some points of view that they City favors (increasing the use of bicycles, reducing the use of carbon based fuels) while Plaintiffs promote ideas the Defendants oppose (body acceptance, recall of the supervisor who authored §154) is a highly factual question which cannot be resolved prior to the completion of discovery, but for purposes of resolving a motion to dismiss, Plaintiffs have identified sufficient facts to state a claim for relief.

## III. PLAINTIFFS PLEAD FACTS SUFFICIENT TO OVERCOME A MOTION TO DISMISS UNDER *O'BRIEN*.

### A. Because San Francisco Enacted the Legislation in Part to Address Primary Effects of Expressive Activity, and because There Is an Allegation of Viewpoint Discrimination, Plaintiffs' As-Applied Challenge Should Be Analyzed under *Texas v. Johnson*, Not *O'Brien*.

Defendants rely on *Pap's A.M.* to support the proposition that government restrictions on public nudity should be evaluated as content-neutral restrictions under *O'Brien*. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 282 (2000); *Texas v. Johnson*, 491 U.S. 397 (1989) ; *United States v. O' Brien*, 391 U.S. 367 (1968).. However, *Pap's A.M.* and other nude dancing cases are distinguishable from

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102
TEL: 415-404-6615    FAX: 415-404-6616

First, the City of Erie justified its nudity restrictions solely on the secondary effects caused by nude dancing including violence, sexual harassment, public intoxication, prostitution, and the spread of sexually transmitted diseases. While the Defendants here justified the ordinance in part based on alleged secondary effects ("a public safety hazard by creating distractions, obstructions, and crowds that interfere with the safety and free flow of pedestrian and vehicular traffic") San Francisco's other two justifications for enactment of the ban, at least as far as they relate to nude expressive activity, clearly address the primary effects of the expressive activity. Specifically, the City justified the ban by alleging that nudity harms "the public unwillingly or unexpectedly exposed to [nudity]" and "[nudity] unreasonably interferes with the rights of all persons to use and enjoy public" spaces and "discourages members of the public from visiting or living in areas where such conduct occurs." SF Police Code §154 (a). "The emotive impact of speech on its audience is not a 'secondary effect'" unrelated to the content of the expression itself. *Boos v. Barry*, 485 U.S. 312, 321, (1988) (plurality opinion); See also *id*. at 334 (Brennan, J., concurring in part and concurring in judgment). By its own admission, San Francisco banned nudity because of the emotive impact nudity has on those who witness it. When the nudity is expressive conduct the emotive impact is a primary, not secondary, effect of speech.

"The ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is… dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner. Any broader view of this authority would effectively empower a majority to silence dissidents simply as a matter of personal predilections....[T]he Constitution does not permit government to decide which types of otherwise protected speech are sufficiently offensive to require protection for the unwilling listener or viewer.

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102
TEL: 415-404-6615   FAX: 415-404-6616

Rather, absent [an intrusion into the sanctity of one's home] the burden normally falls upon the viewer to 'avoid further bombardment of [his] sensibilities simply by averting [his] eyes.'" *Erznoznik v. Jacksonville*, 422 U.S. 205, 210-211, (1975), quoting *Cohen v. California*, 403 U.S. 15, 21 (1971).

This right is not just the individual right of the speaker to present her message, but also the right of the citizenry to receive it. *See, e.g.*, *Grosjean v. American Press Co*., 297 U.S. 233, 247 (1936) (free speech doctrine originated "to establish and preserve the right of the English people to full information in respect of the doings or misdoings of their government."). "The right of freedom of speech and press... embraces the right to distribute literature... and necessarily protects the right to receive it." *Martin v. Struthers*, 319 U.S. 141, 143 (1943). "It is the right of the public to receive suitable access to social, political, esthetic, moral, and other ideas and experiences .... That right may not constitutionally be abridged ...." *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 390 (1969).

Second, Plaintiffs' activity is not erotic dance for commercial purposes which the Supreme Court in *Pap's A.M.* acknowledged falls only within the outer ambit of the First Amendment's protection. *Pap's A.M.*, 529 U.S. at 289. Here, the activity Plaintiffs engage in (i.e. nude protesting in an urban environment) is more akin to the traditional First Amendment activities such as picketing, draft card burning, or flag burning. See §I, supra. Accordingly, the ordinance should be subject to the more exacting standards set forth in *Texas v. Johnson*. *Texas v. Johnson* 491 U.S. at 407.

Finally, this action can be distinguished from the vast majority of the nude dancing cases because it includes an allegation of viewpoint discrimination, which, if proven, will require the Court to apply the higher *Texas v. Johnson* standard.

This action is distinguishable from *Bush v. San Diego* in that the city of San Francisco has recognized that there are more narrow ways of achieving its stated purposes (i.e. allowing nudity at permitted events). *Bush v. San Diego*, 2010 Lexis 57922 (S.D.Cal, June 11, 2010). Also, unlike San Diego, San Francisco has acknowledged that public nudity is appropriate in some circumstances.

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102
TEL: 415-404-6615    FAX: 415-404-6616

(*Defs' Mot. for Jud. Not.*, Ex. D at 2:1-4.) S.F. Police Code §154(c)(2). The Court in *Bush* found that Plaintiffs nudity had nothing to do with her message, which centered on oil dependency, but rather was only being used to amplify her message. *Bush at *3*. Here, Plaintiffs' nudity is directly related to their body acceptance message. (SAC at ¶28.) Also, in *Bush* there was no allegation of selective enforcement as there is here.

The court in *Bush v. San Diego* seemed to reflexively apply logic, reasoning, and legal precedent from the long line of nude dancing cases which involved expression *at the outer limits* of First Amendment protection to a case of symbolic nude speech in the context of political activism, the form of speech that warrants the *highest* amount of First Amendment protection, without considering differences between the two drastically different forms of speech. Fortunately, *Bush v. San Diego* is not binding precedent on this Court. Moreover, the opinion involved the denial of an application for temporary restraining order, which did not foreclose plaintiff the opportunity to develop a more complete record by proceeding with a §1988 claim, as the granting of a motion to dismiss would.

**B. Even if the Court Ultimately Applies the O'Brien Test, Plaintiffs Have Sufficiently Pled Facts to Overcome a Motion to Dismiss.**

**1. San Francisco's Position That the Ordinance Protects the Public from Being Unwillingly or Unexpectedly Exposed to the Genitals of Others Is Not an Important or Substantial Governmental Interest.**

There can be no doubt that some members of the public do not wish to see nudity. Others do not wish to witness teenagers wearing saggy pants. Witnessing men dressed with exaggerated makeup and wearing nun's habits offends the sensibilities of others, while vagrants lounging on benches in dirty clothes are an inexcusable eyesore and disgrace to others. All of these things are found in San Francisco generally and the Castro specifically. Each likely dissuades some people from visiting. The difference between nudity and the other examples can only be explained by concepts of morality which the Supreme Court made clear in *Lawrence v. Texas* is not a legitimate

government interest.  *Lawrence v. Texas*, 539 U.S. 558, 599 (U.S. 2003) ("[The Majority] effectively decrees the end of all morals legislation.  If, as the Court asserts, the promotion of majoritarian sexual morality is not even a legitimate state interest, none of the above-mentioned laws can survive rational-basis review."  (Scalia, J. dissenting).  Moreover, all indications suggest that the public's attitude toward nudity has drastically shifted since earlier nude dancing cases based in part on morality were decided.  Studies show that nudity on television is increasing rapidly in recent years. http://www.foxnews.com/entertainment/2012/08/23/new-study-says-full-frontal-nudity-on-prime-time-tv-up-400-over-last-year/.  Some polls show that 79% of the public say that public displays of nudity should be allowed.    http://www.debate.org/opinions/should-displays-of-public-nudity-swimming-biking-nude-be-allowed.

> **2.  As applied to Plaintiffs' Political Speech, the Ordinance Is Not Sufficiently Narrowly Tailored and Does Not Leave Sufficient Alternative Avenues of Communication.**

In ruling that §154 was facially constitutional, the Court found that in light of the amount of non-expressive behavior it addressed the statute permitted sufficient alternative avenues of communication.  (Order Grant'g Defs' Mot. to Dismiss, Dkt. No. 26 at 2:1-17.)  However, in applying the statute to Plaintiffs while repeatedly refusing to grant permit applications so that they could engage in nude symbolic speech without fear, the Defendants demonstrated the ordinance is not sufficiently narrowly tailored in terms of providing alternative avenues.  In fact, until discovery is complete we cannot obtain an understanding of the nature or number of alternative avenues.  Nor is §154 sufficiently tailored with regard to the amount of clothing required to comply with the statute since, since even minimal clothing fundamentally alters the message these Plaintiffs wish to impart and the City acknowledges circumstances where public nudity does not interfere with the City's stated governmental interests.  (Defs' Mot. for Jud. Not., Ex. D at 2:1-4.)  S.F. Police Code §154(c)(2).

**Permitted Events Exception -** The City acknowledges that whatever its governmental interests, those interests can be met while still allowing nudity at permitted fairs, festivals, and parades. Moreover, the City demonstrated that its interests are not so great as to require the enforcement of §154 during certain unpermitted events such as World Naked Bike Rides and Critical Mass demonstrations. (SAC ¶¶ 73-76; Defs' Mot. for Jud. Not., Ex. E at 48:5-11.) These events do not close public streets, but because the groups are politically connected, Defendants are apparently willing to tolerate nudity and accept the risk of distracted drivers' inadvertent exposure to nudity. (*Id.*)

The City Code contains no provisions specifically relating to the permitting of festivals. It contains a number of ordinances relating to permitting events referred to as fairs or street fairs. Parades are the only type of event identified in the "permitted event exception" of §154 that has a specific permit application process. (Pls.' Mot. for Jud. Not.) Accordingly, Plaintiffs applied on numerous occasions to obtain parade permits in order to engage in nude expressive activity without fear of citation or arrest. The SFPD denied or ignored Plaintiffs' applications on pretext. (SAC at ¶¶38-63.) After Plaintiffs submitted eight applications, the City invented a new excuse for denying Plaintiffs' parade permits applications, stating that Plaintiffs' planned events did not meet the definition of parade. (SAC at ¶61.) Specifically, the City now argues that parades must take place "in" the street. Once again this shows the City's hostility towards Plaintiffs in that the City has denied their request for a permit (knowing the permit is required in order to fall within the permitted event exemption) unless the event takes place in the street, even though the imposing such a requirement clearly will cause a greater disturbance than if Plaintiffs marched on the sidewalk. *See e.g.*, SF Trnsp. Code §6.11 ("[C]losing off several major streets at the same time to accommodate a race often causes hardship in the daily lives of local residents, widespread disruption of public transit

-17-

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET   SAN FRANCISCO, CA 94102   FAX: 415-404-6616
TEL: 415-404-6615

It is evident that including sidewalk marches or political rallies in the permitted event exemption to §154 and the permitting regime would satisfy the City's stated governmental interests while narrowing the amount of suppressed expressive activity.  Traffic distractions could be avoided by using the permitting process to limit events to times and locations where nudity is less likely to distract drivers.  Similarly, if the risk of exposing individuals to nudity is considered a legitimate governmental interest, than that risk could be managed by requiring advanced publicity or signs and barriers warning of the risk of exposure to nudity.  These requirements could be written into §154 or could be contained in the underlying permitting regime.

**Locations Not Covered by the Ban**

Public streets and sidewalks are "the archetype of a traditional public forum."  *Frisby v. Schultz,* 487 U.S. 474, 480 (1988).  Regulation of speech in a traditional public forum "is subject to the highest scrutiny."  *International Soc. for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 678 (1992).  To relegate Plaintiffs' expressive activity to indoor, presumably private, locations or beaches, which in foggy San Francisco are rarely populated, would entirely defeat the purpose of the expressive activity, which is to reach people who may not already agree with Plaintiffs' point of view.  Reaching the speaker's intended audience is essential to the proper functioning of the market place of ideas. *McCullen v. Coakley*, 134 S. Ct. 2518, 2529 (June 26, 2014).  ("It is no accident that public streets and sidewalks have developed as venues for the exchange of ideas.  Even today, they remain one of the few places where a speaker can be confident that he is not simply preaching to the choir.  With respect to other means of communication, an individual confronted with an uncomfortable message can always turn the page, change the channel, or leave the Web site. Not so on public streets and sidewalks. There, a listener often encounters speech he might otherwise tune

-18-

out."). In this regard, Plaintiff's expressive activity is entirely different from the type of commercial nude entertainment at issue in the prototypical nude dancing cases.

Moreover, people don't wish to view the nude element of Plaintiffs' expressive activity can simply look away, while those who are happy to receive it may remain and observe. "Posters, [as opposed door-to-door canvassing and use of sound trucks] do not invade the home. They can be avoided simply by not looking." *Baldwin v. Redwood City*, 540 F.2d 1360, 1367-1368, (9th Cir. Cal. 1976) (recognizing that means of communication are not entirely fungible).

**Minimal Covering Requirement**

As alleged in the SAC, the addition of pasties and g-strings would fundamentally change the message Plaintiffs intend to impart. (SAC at ¶29.) While courts may have found such restrictions tolerable in erotic dance cases, the situation here is quite different. As the famous Gypsy Rose Lee informed us, leaving something to the imagination in the case of an erotic dance can enhance the erotic message. Here such clothing elements would render Plaintiffs' serious political message a farce. Plaintiffs believe people should not be ashamed of the size, shape, color, or form of their bodies, especially their genitalia. In speeches accompanying their nude symbolic speech, Plaintiffs not only eschew clothing designed to hide the body, but also clothing designed to accent the genitalia, such as high heels, which are designed to push a woman's buttocks up and her breasts out. They argue that women should not be ashamed of the size or shape of their breast and men should not find their self worth in the size of their penis. Pasties and g-strings tend to draw sexual attention to the genitals rather than to present the body as beautiful in its natural, unsexualized state.

The face of the statute combined with the City's record of enforcement suggests there is room for the City to narrow the statute by broadening the exemptions, thereby permitting Plaintiffs to present their important nude symbolic speech while still satisfying the City's expressed governmental interests.

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET    SAN FRANCISCO, CA 94102    FAX: 415-404-6616
TEL: 415-404-6615

## IV. DEFENDANTS PLACED A PRIOR RESTRAINT ON PLAINTIFFS' SPEECH.

Prior restraints on speech may occur in two ways. First, "governmental action constitutes a prior restraint when it is directed to suppressing speech because of its content before the speech is communicated." *Berg v. Health & Hosp. Corp. of Marion County, Ind*., 865 F.2d 797, 801 (7th Cir. 1989) (citing earlier decisions). That rule has been applied to strike down licensing schemes as unconstitutional prior restraints on speech where officials are given the power to restrain speech before it even occurs and is viewed by the officials *Southeastern Promotions,* 420 U.S. at 552-53. Second, a prior restraint may occur where communication is suppressed, either directly or by inducing excessive caution in the communicator, without a prior judicial determination that the speech is unprotected by the First Amendment. *Alexander v. United States*, 509 U.S. 544, 549 (1993); *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 390 (1973). Defendants have restrained Plaintiffs speech in both ways.

A permitting requirement is a prior restraint on speech and therefore bears a heavy presumption against its constitutionality. *Berger v. City of Seattle*, 569 F.3d 1029, 1034 (9th Cir. Wash. 2009). *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70 (1963) (Systems of prior restraint are tolerated only where operated under judicial superintendence and where an almost immediate judicial determination of the validity of the restraint is assured). Here, section §154 is a permitting requirement because it incorporates an exemption for permitted fairs, festivals, and parades. Speakers who desire to engage in nude symbolic speech must either do so at an event for which others have obtained a permit or they must obtain their own permit. Plaintiffs attempted both approaches, but Defendants have steadfastly restrained their symbolic speech.

Enactment of §154 did not alter San Francisco's permitting codes. Rather, it incorporated the existing permitting regime into §154 - finding existing requirements sufficient to accomplish the City's stated governmental interests. Plaintiffs allege that the SFPD denied their permit on one

-20-

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET    SAN FRANCISCO, CA 94102    FAX: 415-404-6616
TEL: 415-404-6615

occasion by stating that "[u]nfettered nudity interferes with the rights of all persons to use and enjoy public spaces, and harms members of the public who are unwillingly or unexpectedly exposed to such conduct." (SAC at ¶55.) On other occasions, times SFPD failed to rule on Plaintiffs' applications even though the code requires a written determination on each application within a specified period of time. (SAC at ¶38-63; Pls.' Mot. for Jud. Not., Ex. A at SF Police Code §367(f) and (g); §370.) The City denied Plaintiffs' more recent applications stating the events for which they sought permits were not parades. (*Id.*, SF Police Code §366(e); but see, Ex. B, S.F. Parks Code §7.02(j) and Ex. C, S.F. Port Code §6.2(I).)

The Code identifies specific reasons for which SFPD can deny parade permits. (*Id.*, Ex. A, S.F. Police Code §369.) The inclusion of nude symbolic speech or the failure to meet the definition of a parade are not among the specified reasons. By denying Plaintiffs' applications for impermissible reasons, or failing to provide written approval/denial when required under the code, Defendants engaged in impermissible abuse of discretion in processing Plaintiffs' applications thus unconstitutionally restraining Plaintiffs' First Amendment right to engage in symbolic speech.

The City also engaged in the other form of prior restraint. Defendants issued citations to Plaintiffs for engaging in nude symbolic speech at events to which the "permitted event exemption" applied. (SAC ¶¶64-72.) In both instances, the City admits the events fell within the "permitted event exemption." (Mot. to Dismiss SAC, Dkt. No. 86 at 23:15-18.) In the first episode, Plaintiffs alleged (and the facts will show) that SFPD issued a citation to Plaintiff Taub while she attended Bay to Breakers. Although the City admits Bay to Breakers was a permitted event, it claims the citation did not occur during the event. (*Id.* at n.14.) For the purposes of a motion to dismiss the Court must view the facts in the light most favorable to the nonmoving party. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). In the second episode, the SFPD cited Plaintiff Davis while attending the Haight Street Fair and threatened to arrest him if he did not cover his genitals. (SAC at ¶72.) Defendants admit

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102    FAX: 415-404-6616
TEL: 415-404-6615

these actions, but say the citation and threat of arrest were a mistake. (Mot. to Dismiss SAC, Dkt. No. 86, n. 14.) Plaintiffs fail to understand how admitting the mistake now undoes the fact that the SFPD interrupted and restrained Mr. Davis' nude symbolic speech.

None of the cases relied upon by Defendants involved situations where speakers were restrained when no law was violated. *Alexander v. United States*, 509 at 546, (Petitioner criminal convicted of violating obscenity laws); *Ward v. Rock Against Racism*, 491 U.S. 781 (U.S. 1989) (City sound ordinance properly applied to concert); *Polykoff v. Collins*, 816 F2d 1326, 1338 (9th Cir. 1987)(Conviction for sale of obscene items).

In Cuviello, (*Cuviello*, 940 F. Supp. 2d at 1084 n.5) this Court describe post-hoc regulation of speech as inapposite to a claim of prior restraint relying on *Southeastern Promotions*. *Southeastern Promotions, Ltd.*, 420 at 553. However, *Southeastern Promotions* dealt with the first type of prior restraint, i.e. unwarranted discretion in making pre-speech ministerial decisions at the permitting or licensing stage. As presented above, that type of prior restraint is evident here, but the second type of prior restrain is also evident.

Courts have found that where enforcement officials restrain speech prior to obtaining a warrant or some other judicial determination on the validity of the law, such restraints are unlawful prior restraints. In other words, while it may not be a prior restraint to enforce a law after it has been violated, it may be a prior restraint to prevent expressive activity when no law has been violated. *See*, *Attwood v. Purcell*, 402 F. Supp. 231, 237 (D. Ariz. 1975) (Arrest is the most effective form of prior restraint); *Alexis, Inc. v. Pinellas County*, 194 F. Supp. 2d 1336, 1348, 30 (M.D. Fla. 2002) ("Law enforcement actions which go beyond that necessary to enforce the laws and are designed to chill First Amendment rights constitutes [sic] harassment and infringe on First Amendment rights")(collecting cases for support of the proposition that harassment by law enforcement can constitute a prior restraint); *Furfaro v. City of Seattle*, 984 P.2d 1055 (Wash.Ct.App. 1999)

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102
TEL: 415-404-6615    FAX: 415-404-6616

(Warrantless arrests of dancers operated as unconstitutional prior restraints); *Admiral Theatre v. City of Chicago*, 832 F. Supp. 1195, 1204 (N.D. Ill. 1993).

Thus, where the SFPD cited Plaintiffs even though they were not violating §154 and ordered them to cease engaging in symbolic speech even though they were not violating *any* law, those actions by the SFPD amount to a de facto prior restraint.

## V. DEFENDANTS ENFORCED THE ORDINANCE IN A MANNER THAT COMPELLED PLAINTIFFS TO PRESENT A MESSAGE CONTRARY TO THE MESSAGE THEY WISH TO PRESENT

As previously discussed, in the case of an as-applied challenge, context matters. Courts have routinely ruled that in certain circumstances nudity is expressive conduct. Certainly, in the case of these clients, requiring them to change the mode of their dress inherently alters the message. In fact, it changes the message from one of body acceptance to one of body shame. (SAC at ¶29.) Relying primarily on school uniform cases, Defendants argue that required clothing is not speech because it does not express a particularized message. Each of those cases, like the one before the Court, was context driven and the factual back grounds are not interchangeable with those in this action. Here, the choice is not between clothing and no clothing, it is between nudity and nudity except for the clothing required to comply with the ordinance. Clearly, being fully clothed in the context of a political rally advocating body acceptance is at odds with Plaintiffs' message.

Requiring pasties and g-strings in the context of core political speech is different from requiring pasties and g-strings in the context of a performance or erotic speech. Indeed, such requirements in the context of speech intended to desexualize nudity creates a mockery of Plaintiffs' message. Plaintiffs should be allowed to proceed with this claim and should be given the opportunity to present evidence and expert testimony on how the state of dress or undress alters the perception of their message.

## VII. DEFENDANTS VIOLATED PLAINTIFFS RIGHT TO PETITION

Plaintiffs agree to withdraw their separately alleged sub-claim for violation of the right to petition set forth as Count Five of the SAC, but note that facts and arguments relative to this sub-claim are relevant to their viewpoint discrimination sub-claim set forth at Count Four.

The Law Office of D. Gill Sperlein
345 Grove Street   San Francisco, CA 94102   Fax: 415-404-6616
Tel: 415-404-6615

## VII. THE ORDINANCE IS VAGUE AS APPLIED TO PLAINTIFFS.

At the time Plaintiffs filed the Second Amended Complaint, it appeared that the permitted event exception to §154 was vague as to what events fell within the permitted event exception, since Defendants enforced the ordinance against Plaintiffs even while attending the Haight Street Fair and Bay to Breakers. Now, Defendants attempt to justify the two citations by labeling the first a mistake and alleging that the other occurred after Bay to Breakers had ended even though the time on the citation was 9:23 a.m., the streets were still closed to traffic, and the officers informed Ms. Taub that the permitted exception did not apply. Alternatively, Plaintiffs speculated that perhaps Defendants believed that event sponsors could opt out of the permitted event exception and request that SFPD enforce the ordinance even at permitted events. That question remains unanswered and thus the ordinance remains vague in that regard.

With regard to Mr. Davis' as-applied challenge, the ordinance is vague as to how the City applied, or rather failed to apply, the permitted event exception to him at the time SFPD ordered him to cease engaging in nude symbolic speech at a permitted event. The fact that SFPD did not seem to understand how the exception applied seems to evidence some element of vagueness. For the purpose of Ms. Taub's as-applied challenge, the ordinance is vague as to how the beginning and ending of the Bay to Breakers event should be determined for the purpose of applying the permitted event exception.

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102   FAX: 415-404-6616
TEL: 415-404-6615

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102    FAX: 415-404-6616
TEL: 415-404-6615

**CONCLUSION**

WHEREFORE, Plaintiffs request that this Court deny Defendants' Motion to Dismiss, and require Defendants to Answer the Second Amended Complaint. Should the Court determine that any essential allegation is absent from the SAC, or further factual detail is required, Plaintiffs request an opportunity to amend to cure any perceived deficiency.

Dated: *August 6, 2014*           by: /s/ D. Gill Sperlein
                                  D. GILL SPERLEIN
                                  THE LAW OFFICE OF D. GILL SPERLEIN

                                  LAWRENCE G. WALTERS
                                  WALTERS LAW GROUP

                                  Attorney for Plaintiffs Oxane Taub and George Davis