1

2

3

4

5                      UNITED STATES DISTRICT COURT

6                      NORTHERN DISTRICT OF CALIFORNIA

7

8  MITCH HIGHTOWER, *et al.*,                    No. C-12-5841 EMC

9              Plaintiffs,

                                                 **ORDER GRANTING IN PART AND**
10        v.                                     **DENYING IN PART DEFENDANTS'**
                                                 **MOTION TO DISMISS**
11  CITY AND COUNTY OF SAN
    FRANCISCO, *et al.*,                         **(Docket No. 86)**
12
              Defendants.
13
    _____/
14

15

16                          I.   **INTRODUCTION**

17        Plaintiffs Oxane "Gypsy" Taub and George Davis have filed a class action against

18  Defendants the City and County of San Francisco, two members of the Board of Supervisors (in

19  their official capacities only), and the clerk of the Board of Supervisors (in her official capacity

20  only), alleging that the enforcement of a San Francisco ordinance that bars nudity on, *e.g.*, public

21  streets and sidewalks violates their First Amendment rights.  Currently pending before the Court is

22  Defendants' motion to dismiss.

23                 II.   **FACTUAL & PROCEDURAL BACKGROUND**

24        At issue in this case is the validity of a San Francisco ordinance which bars nudity on, *e.g.*,

25  public streets and sidewalks.  Plaintiffs initiated this lawsuit as a facial challenge before the

26  ordinance was even adopted.  The Court granted Defendants' motion to dismiss Plaintiffs' initial

27  complaint, with leave to amend.  *See* Docket No. 26.  Subsequently, the Court granted Plaintiffs'

28  request for leave to amend its complaint again.  *See* Docket No. 83.  Plaintiffs filed a second

**United States District Court**
For the Northern District of California

amended complaint, challenging the constitutionality of the ordinance as-applied.  Docket No. 84.

Defendants now move to dismiss the second amended complaint.  *See* Docket No. 86.

The ordinance at issue, Section 154 of the San Francisco Police Code (the Ordinance) provides as follows:

(a) The Board of Supervisors finds that a person's public exposure of his or her private parts invades the privacy of members of the public who are unwillingly or unexpected exposed to such conduct and unreasonably interferes with the rights of all persons to use and enjoy the public streets, sidewalks, street medians, parklets, plazas, public rights-of-way, transit vehicles, stations, platforms, and transit system stops, (2) creates a public safety hazard by creating distractions, obstructions, and crows that interfere with the safety and free flow of pedestrian and vehicular traffic, and (3) discourages members of the public from visiting or living in areas where such conduct occurs.  The Board of Supervisors has enacted the provisions of this Section 154 for the purpose of securing and promoting the public health, safety, and general welfare of all persons in the City and County of San Francisco.

(b) A person may not expose his or her genitals, perineum, or anal region on any public street, sidewalk, street median, parklet, plaza, or public right-of-way as defined in Section 2.4.4(t) of the Public Works Code, or in any transit vehicle, station, platform, or stop of any government operated transit system in the City and County of San Francisco.

(c) The provisions of this chapter shall not apply to (1) any person under the age of five years or (2) any permitted parade, fair, or festival held under a City or other government issued permit.

1    Notwithstanding this exemption, all persons participating in or

2    attending permitted parades, fairs or festivals shall comply

3    with Section 1071.1(b)(2) of the San Francisco Police Code.[1]

4    (d)   Any person who violates this Section 154 shall be guilty of an

5    infraction and upon conviction thereof such person shall be

6    punished by a fine not to exceed one hundred dollars ($100)

7    for a first violation, and not to exceed two hundred dollars

8    ($200) for a second violation within twelve months of the first

9    violation.

10   (e)   Upon the third or subsequent conviction under this Section 154

11   within twelve months of the first violation, such person shall

12   be guilty of an infraction or a misdemeanor.  The complaint

13   charging such violation shall specify whether, in the discretion

14   of the District Attorney, the violation is an infraction or a

15   misdemeanor.  If charged as an infraction, upon conviction, the

16   violator shall be punished by a fine not to exceed $500.  If

17   charged as a misdemeanor, upon      conviction, the violator

18   shall be punished by a fine not to exceed $500 or by

19   imprisonment in the County Jail for a period of time not to

20   exceed one year or by both such fine and imprisonment.

21   (f)   This Section shall not supersede or otherwise affect existing

22   laws regulating nudity under the San Francisco Municipal

23   Code, including but not limited to the Park Code, Police Code,

24   and Port Code.  But in the event of a conflict between this

25   Section 154 and Police Code 1071.1(b)(2), this Section 154

26   shall prevail.

27

28

---

[1] Section 1071.1 governs public nudity in restaurants and public seating areas.

United States District Court

For the Northern District of California

1                (g)       A violation of this Section does not require lewd or sexually

2                         motivated conduct as required under the indecent exposure

3                         provisions of California Penal Code Section 314 or for

4                         purposes of California Penal Code 290(c).

5    S.F. Police Code § 154.

6        Plaintiffs contend that the above ordinance, as applied by Defendants, violates their rights as

7    protected by the First Amendment.  Plaintiffs claim that they are individuals who engage in

8    expressive political activity while they are nude.  *See* Docket No. 84, Second Amended Complaint,

9    ("SAC") ¶¶ 10-16.  For example, Ms. Taub and Mr. Davis claim to have engaged in two nude

10   protests at City Hall, expressing a pro-body and anti-§154 message.  *See* SAC ¶¶ 10-12.  At both of

11   these events, Plaintiffs claim that the San Francisco police enforced § 154 by issuing citations and

12   taking protesters into custody.  *See* SAC ¶¶ 10-14.  Plaintiffs claim that on three occasions

13   Defendants have not enforced the ordinance against others despite obvious violations.  *See* SAC ¶¶

14   22-23.  Plaintiffs also allege that the San Francisco Police Department (SFPD) have improperly

15   deviated from the parade permitting procedures provided by Article 4 of the Police Code.  ¶¶ 10-18.

16   For example, Plaintiffs alleges that on December 5, 2013 the SFPD denied Ms. Taub's application

17   for an event permit on the grounds that "public nudity violates SF Police Code 154."  SAC ¶ 16.

18   San Francisco Police Code, Article 4, section 369, entitled "*Grounds for denial of application for*

19   *parade permit*," provides:

20                The Chief of Police shall approve an application for a parade permit unless he

21                or she determines, from a consideration of the application, or such

22                information as the Chief of Police may otherwise obtain, or both, that:

23                (a)       The Chief of Police has reasonable cause to conclude that the

24                         applicant or any person or persons participating in the parade will, in

25                         connection with that activity, cause physical injury to persons or

26                         substantial damage to property; or

27                (b)       The conduct of the event will substantially interrupt the safe and

28                         orderly movement of other traffic contiguous to its route; or

(c)     The conduct of the event will require the diversion of so great a number of police officers to properly police the line of movement and the areas contiguous thereto as to prevent normal police protection to the rest of the City and County of San Francisco; or

(d)     The concentration of persons, animals and vehicles at the assembly areas of the event will unduly interfere with proper fire and police protection of, or ambulance service to, areas contiguous to such assembly areas; or

(e)     The conduct of the event will interfere with the movement of fire-fighting equipment en route to a fire; or

(f)     The conduct of the event will substantially obstruct or interfere with any construction or maintenance work scheduled to take place upon or along the public streets; or

(g)     Another permit application has been received, and has been or may be approved, to sponsor a parade at the same time and place requested by the applicant, or so close in time and place that undue confusion or congestion would result, or the Police Department would bear an unreasonable burden in meeting the request for services by more than one applicant; or

(h)     The parade will not move from its point of origin to its point of termination in four hours or less, or such other reasonable time limit as set by the Chief of Police in light of all relevant circumstances; or

(i)     The applicant fails to provide the information requested on the application form or to provide Police Department staff, when requested to do so, with further information in order to enable the Chief of Police to verify the information required on the application form; or

(j)     The applicant fails to provide proof of approval from other governmental departments or agencies when such approval is legally required; or

(k)     The applicant fails or refuses to comply with any condition reasonably imposed on the granting of the permit in order to insure the safety of event participants, members of the Police Department or the public, or to insure the orderly flow of traffic, or to avoid the likelihood of harm to public or private property, which conditions may include a change in the route of the event; provided, however, that nothing in this Section shall be deemed to authorize the Chief of Police to impose conditions which unreasonably interfere with the right of free speech; or

(l)     Other circumstances exist which make it likely that the event would significantly interfere with ordinary activities in the City and County of San Francisco.

SFPC, Art. 4 §369(a)-(l).

On November 14, 2012, Defendants filed its initial complaint, asserting that the Ordinance was facially unconstitutional and seeking a preliminary injunction. Docket No. 1. Among other claims, Plaintiffs alleged that the Ordinance impermissibly restrained their First Amendment right to engage in expressive nude conduct. *Id*. On January 29, 2013, the Court dismissed Plaintiffs' pre-enforcement challenge with prejudice. Docket No. 26. In doing so, the Court determined that "absent any other context to suggest that nudity is intended to convey a particular message" the act of being nude in public is not protected by the First Amendment. *Hightower v. City & Cnty. of San Francisco*, 2013 WL 361115, at *7 (N.D. Cal. Jan. 29, 2013). However, the Court also provided Plaintiffs with leave to amend "to plead an as-applied challenge." *Id*. at *12. Subsequently, Plaintiffs filed this as applied challenge. *See* SAC.

United States District Court

For the Northern District of California

In their second amended complaint, Plaintiffs assert the following claims:

(1)     That the Ordinance, as applied, violates their First Amendment rights because it (a) restricts core political speech; (b) compels speech; (c) infringes upon their right to petition[2] and (d) acts as an impermissible prior restraint.  *See* SAC ¶¶ 24-27.

(2)     That the Ordinance at issue violates their First Amendment rights because the SFPD enforces the Ordinance in a viewpoint discriminatory manner.  SAC ¶ 26.

(3)     That the Ordinance, as applied, is unconstitutionally vague.  SAC ¶ 27.

## III.   DISCUSSION

A.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully."  *Iqbal*, 129 S. Ct. at 1949.

B.   Expressive Conduct

"The First Amendment protects not only the expression of ideas through printed or spoken words, but also symbolic speech– nonverbal activity ... sufficiently imbued with elements of

---

[2] In their Opposition, Plaintiffs have "agreed to withdraw their claim" for violation of the right to petition. *See* Opp' at 23.

7

**United States District Court**
For the Northern District of California

communication." *Roulette v. City of Seattle*, 97 F.3d 300, 302-03 (9th Cir. 1996) (quoting *Spence v. Washington*, 418 U.S. 405, 409 (1974) (internal quotation marks omitted)).  Conduct is said to constitute "symbolic speech" if two requirements are met.  First, the conduct must demonstrate "[a]n intent to convey a particularized message."  *Spence*, 418 U.S. at 410-11.  Second, there must be a great likelihood that "the message would be understood by those who viewed [said conduct]."  *Id*.

Here, Plaintiffs allege fourteen  separate instances in which they engaged in public nude conduct.  *See* SAC ¶¶ 32-72.  During ten of those instances Plaintiffs allege that San Francisco police officers restrained their nude conduct by enforcing § 154 – issuing citations and sometimes detaining the Plaintiffs.  SAC ¶¶ 33, 35, 37, 51, 54, 57, 60, 63, 67, 72.  Thus, the initial inquiry before the Court  is whether the Plaintiffs' nude conduct, in any of those ten instances in which the state restrained their conduct, constituted "expressive conduct" within the meaning of *Spence*.

Applying the test annunciated by the Court in *Spence*, Plaintiffs' nudity is "expressive conduct" if (1) there was an intent to convey a particularized message; and (2) "in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it."  *Spence*, 418 U.S. at 411; *see also Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1058 (9th Cir. 2010) (applying *Spence*, 418 U.S. at 409-11).

1.      Intent to Convey a Particularized Message

Plaintiffs have alleged that they intended their nudity to express a particularized message.  During each of the ten alleged instances, Plaintiffs further allege that they intended their nude conduct to convey an expression of (1) protest of San Francisco Police Code § 154; or (2) support for public nudity; or (3) both.  *See* SAC ¶¶ 32, 34, 50, 53, 56, 59, 62, 67, 70.  These allegations, taken as true, support a determination that, at all relevant times, an intent to convey a particularized message was present.

2.      Likelihood that the Message Will Be Understood by Those Who Viewed It

In determining whether there is a great likelihood that those who view certain conduct will understand its intended message, context is essential.  *Spence*, 418 U.S. at 411 (explaining that the timing of conduct, during or around "issues of great public moment," may transform "otherwise bizarre behavior" into conduct that "the great majority of citizens" would understand "the drift of").

United States District Court

For the Northern District of California

As such, the inquiry into whether certain conduct is expressive must be carried out on a case-by-case basis, examining the circumstances surrounding the conduct in question.  *See, e.g., City of Erie v. Pap's A.M.*, 529 U.S. 277, 289-90 (2000) (plurality opinion) ("Being "in a state of nudity" is not an inherently expressive condition . . . however, nude dancing *of the type at issue here* is expressive conduct") (emphasis added); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 505-14 (1969) (holding that the wearing of black armbands, while meaningless in some cases, constituted expressive conduct in the context of that case).

While timing and setting are both circumstances that may imbue conduct with expressive elements, the Supreme Court has made it clear that conduct cannot become "expressive" solely because of the *speech* that surrounds it or explains it.  *See Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006).  In fact, if conduct requires explanatory speech to be understood, that "is strong evidence that the conduct at issue [ ] is not so inherently expressive that it warrants protection."  *Id.* at 66.

In sum, whether those that view certain conduct are likely to understand its intended message must be evaluated on a case-by-case basis, taking into account the context and circumstances surrounding the conduct, but without regard to any explanatory speech that accompanies it.

Here, as noted, Plaintiffs allege ten separate instances of public nude conduct in which § 154 was enforced.  To determine if, in any one of these instances, there was a "great likelihood" that those who viewed this conduct understood Plaintiffs' intended message, the Court must evaluate the circumstances attendant to each one.

      a.    City Hall Protests

Of the ten instances of nude conduct alleged by the Plaintiffs, three of them take place outside of City Hall.  *See* SAC ¶¶ 32, 36, 56.  In all three of those instances,  Plaintiffs allege they engaged in nude protests.  SAC ¶¶ 32, 36, 56.

      1.    February 1, 2013

The first of these instances is alleged to have taken place on February 1, 2013; only three days after this Court dismissed Plaintiffs' motion for preliminary injunction.  SAC ¶ 32; Docket No.

United States District Court

For the Northern District of California

26.  Plaintiffs allege that they engaged in typical protest behavior, carrying signs and giving

speeches, directly outside the main entrance to the San Francisco City Hall, while nude.  SAC ¶ 32.

Examining the circumstances as alleged, and as *Rumsfeld* requires, the Court finds that there

was a "great likelihood" that Plaintiffs' nude conduct conveyed their intended "anti- § 154" message

to those in the vicinity – even without the help of Plaintiffs' explanatory speech.  Two primary

circumstances support this finding.  First, this protest took place on the first day that § 154 took

effect, and on the heels of a well publicized civic debate over the City of San Francisco's nudity

policies.  Second, this protest took place at the San Francisco City Hall, where the ordinance was

passed and where there had been prior debate and protests against § 154 shortly before.  Viewing the

facts alleged in the light most favorable to the Plaintiff, the Court finds that the timing and location

of the protest provided a context that was sufficient to transform "otherwise bizarre behavior" into

conduct that "the great majority of citizens" would understand "the drift of."  *Spence*, 418 U.S. at

411.

The timing of the Plaintiffs' protest weighs strongly in favor of a determination that a

passerby would understand their intended anti- § 154 message.  In *Spence*, a man displayed an

American flag with a "peace-sign" sewn into it, intending to convey a message that "America stood

for peace."  418 U.S. at 409.  In assessing whether such conduct was likely to convey that intended

message, the Court noted that the man's "activity was roughly simultaneous with and concededly

triggered by the Cambodian incursion and the Kent State tragedy."  *Id*. at 410.  This temporal

context was sufficient for the Court to determine that "it would have been difficult for the great

majority of citizens to miss the drift of appellant's point at the time that he made it."  *Id*.  (paralleling

the public reflection on the Cambodian incursion and the Kent State tragedy to the public concern

over the hostilities in Vietnam discussed in *Tinker*, 393 U.S. 503).

Here, Plaintiffs allege § 154 took effect on the same day as their protest.  SAC ¶¶ 24, 32.

Similar to *Spence*, the fact that Plaintiffs' nude protest was allegedly "simultaneous with and

concededly triggered by the" enactment of § 154 is sufficient for the Court to determine that a

passerby would link the nude conduct with the enactment of § 154.  Moreover, Plaintiffs allege that

prior to that date, both Ms. Taub and Mr. Davis were engaged in a well publicized debate over the

1    City of San Francisco's public-nudity policy.  *See* SAC ¶¶ 19, 20.  As in *Spence*, the well publicized

2    nature of this debate among San Franciscans further supports the conclusion that "the great majority

3    of citizens" would understand that Plaintiffs' nudity was in  opposition to the enactment of § 154 – a

4    nudity ban.

5       In addition to the timing, the location of the Plaintiffs' alleged protest also supports this

6    determination.  Plaintiffs allege that the protest took place outside the San Francisco City Hall,

7    where the ordinance was passed by the Board of Supervisors.  This location naturally links a protest

8    with the actions of city government.  Here, that link, between Plaintiffs' nude protest and the city

9    government, further supports a finding that a passerby would understand that the Plaintiffs' nudity

10   was in opposition to the city government's enactment of § 154.

11      In sum, both the temporal and geographical context surrounding Plaintiffs' February 1, 2013

12   nude conduct support a "great likelihood" that a passerby understood Plaintiffs' intended "anti-§

13   154" message.  As such, the Court finds and determines that the Plaintiffs' nudity at this event was

14   expressive conduct within the meaning of *Spence*.

15         2. <u>March 22, 2013</u>

16      The second City Hall protest is alleged to have taken place on March 22, 2013.  SAC ¶ 36.

17   For the same reasons enumerated in the first instance, the Court finds that the contextual factors

18   alleged –*e.g.* outside of city hall, within two months of a prominent public debate on the subject of

19   public nudity – were sufficient to convey an "anti-§ 154" message to the great majority of passers

20   by.

21         3. <u>December 19, 2013</u>

22      The third instance of Plaintiffs' nude protesting outside of City Hall is alleged to have taken

23   place on December 19, 2013; more than ten months after § 154 had taken effect. SAC ¶ 36.  The

24   Court finds that this conduct was sufficiently removed in time from the civic debate over § 154, such

25   that there was no longer a "great likelihood" that a passerby would understand Plaintiffs' intended

26   message from their nude conduct alone.  *See Roulette v. City of Seattle*, 97 F.3d 300, 303 (9th Cir.

27   1996) (discussing *Spence*, explaining that when an intended message relates to a current event, the

28

11

1    proximity in time of the conduct at issue to the event itself  is essential to a determination of the

2    likelihood that a passerby will derive the intended message).

3                    b.    Castro Neighborhood

4         Of the ten instances of nude conduct alleged by the Plaintiffs, three of them take place in the

5    Castro neighborhood of San Francisco.  *See* SAC ¶¶ 34, 59, 62.  In each instance, Plaintiffs allege

6    that they communicated their "pro-nudity" and "anti- § 154"  messages by disrobing.  *Id.*  In one

7    instance, Plaintiffs allege that the message was conveyed by engaging in "nude artistic dance."  SAC

8    ¶ 34.  Examining the timing and circumstances as alleged, and as *Rumsfeld*  requires, the Court finds

9    that there is not a "great likelihood" that a passerby understood either of the specific messages that

10   the Plaintiffs' intended to convey through their nudity.

11        As an initial matter, two of the three events are alleged to have taken place one year after the

12   first protest in front of City Hall.  *See* SAC ¶¶ 59, 62.  Thus, the Court finds these events are

13   sufficiently removed in time from the civic debate over § 154, such that there was no longer a "great

14   likelihood" that a passerby would understand Plaintiffs' intended message from their nude conduct

15   alone.  *See Roulette v. City of Seattle*, 97 F.3d 300, 303 (9th Cir. 1996).  However, even if the timing

16   of the protests did not sufficiently remove the communicative context surrounding Plaintiffs'

17   conduct, its geographical remoteness from City Hall did.

18        As the Plaintiffs themselves note, a variety of groups use public nudity to convey or amplify

19   a variety of messages.  *See* Opp' at 11 (alleging that "other groups use nudity to express other ideas"

20   – *e.g.*, pro-bicycle or pro-environmentalist ideas); *see also* Opp' at 15 (distinguishing the facts of

21   *Bush v. San Diego* from the facts of this case, on the ground that in *Bush* the plaintiffs were using

22   nudity to amplify an environmentalist message, not express one).  It is not evident that one in the

23   nude would be perceived as trying to convey a political message.  Even if it were, it is not clear what

24   that particular message would have been.

25        Accordingly, the Court concludes that there was not a great likelihood that a Castro

26   pedestrian derived the specific "pro-nudity" or "anti- § 154" message that the Plaintiffs intended

27   their conduct to convey.  As such, Plaintiffs' alleged nude conduct in the Castro was not expressive

28   conduct within the meaning of *Spence*.

United States District Court

For the Northern District of California

12

United States District Court

For the Northern District of California

c.      Permitted Events

Plaintiffs allege two instances in which they engaged in nude conduct in places where nudity is permitted and expected by the public.  *See* SAC ¶¶ 64, 69.  In one instance, on May 18, 2014, Plaintiffs allege that Ms. Taub walked around the course of the "Bay to Breakers" event wearing nothing but a hat that read "recall Weiner."  Six days later, on May 24, 2014, Plaintiffs allege that Mr. Davis walked around "The Haight Street Fair," entirely naked with the words "Body Freedom" written across his chest, back and arm.

As an initial matter, although the phrases on of Ms. Taub's hat and on Mr. Davis's body may be speech, under *Rumsfeld*, neither the phrase "recall weiner" nor the phrase "body freedom" can be relied upon to imbue the Plaintiffs' nude conduct with expressive elements sufficient to invoke *O'Brien* because given the non-speech context surrounding Plaintiffs' alleged conduct, there is no great likelihood that Plaintiffs' conduct conveyed either of Plaintiffs' intended messages to a passerby.  The Court reaches this conclusion for two reasons.

First, both of these events are alleged to have taken place more than a year after the civic debate regarding public nudity in San Francisco.  The temporal remoteness alone is sufficient for the Court to find that a passerby would not likely understand the Plaintiffs' messages.

Second, there is a tradition of participants disrobing during The Haight Street Fair and Bay to Breakers.  Because nudity is a traditional component of both of these events, a passerby at either event would likely have assumed that Plaintiffs' nudity was a function of their event participation. As such, the Court determines that Plaintiffs' nudity in this context did not convey either an anti-§154 message or a pro-nudity message.  Accordingly, the Court concludes that there was not a great likelihood that a passerby derived the specific political message that the Plaintiffs intended their conduct to convey at The Haight Street Fair or Bay to Breakers events.  As such, Plaintiffs' alleged nude conduct at these events was not expressive conduct within the meaning of *Spence*.

d.      Undisclosed Locations

The two remaining instances in which Plaintiffs allege their nude conduct was restrained by the enforcement of § 154, alleged to have taken place on November 17 and December 15 of 2013, are not plead with sufficient detail.  *See* SAC ¶¶ 50, 53.  Specifically, Plaintiffs have failed to

disclose where these events took place, or any other contextual features may have impacted the

perception of their conduct.  In both instances, Plaintiffs allege only that they engaged in nude

protest in public, and were subsequently restrained.  Looking only to these facts, the Court cannot

determine that there was a great likelihood Plaintiffs' conduct conveyed their intended message.

The Court notes that even if further details were provided, neither event is alleged to have taken

place sufficiently close in time to the civic debate over public nudity.

        In sum, the Court finds and determines that eight of the ten instances of nude conduct alleged

by the Plaintiffs do not constitute expressive conduct protected by the First Amendment.  However,

the Court also finds that the Plaintiffs' nude conduct outside of City Hall on February 1, 2013 and

March 22, 2013, as alleged, plausibly constituted expressive conduct within the meaning of *Spence*,

and are thus protected by the First Amendment.

C.      The *O'Brien* Test

        The *O'Brien* test generally governs claims involving expressive conduct, unless the statute at

issue is a "content based."  *See O'Brien*, 391 U.S. at 376-77; *see also Johnson*, 491 U.S. at 404.   In

*Minority TV Project, Inc. v. FCC*, the Ninth Circuit explained that a "content based" statute is a

statute that, on its face, proscribes speech based upon its message.  676 F.3d 869, 872-74 (9th Cir.

2012).

        Here, § 154 is content neutral because it does not ban nudity based upon the content of

expressive conduct.  Section 154 bans public nudity whether or not it is expressive.  This view is

consistent with *Pap's*, where a plurality of the Supreme Court applied the *O'Brien* test .  *See Pap's

A.M.*, 529 U.S. at 289, 295 ("clarify[ing] that government restrictions on public nudity such as the

ordinance at issue here should be evaluated under the framework set forth in *O'Brien* for content-

neutral restrictions on symbolic speech"; adding that "there is nothing objectionable about a city

passing a general ordinance to ban public nudity (even though such a ban may place incidental

burdens on some protected speech)").  Hence, on its face and in its general application, if expressive

conduct is involved, *O'Brien* applies.

        Plaintiffs argue that this case presents a factually distinguishable situation, but it does not

cite any authority that casts doubt upon a determination that § 154 is content neutral within the

United States District Court

For the Northern District of California

1   meaning of *Minority TV*.  Accordingly, for the above stated reasons, the Court applies the *O'Brien*

2   test in evaluating Plaintiffs' claim that the Ordinance impermissibly restricts their speech.

3        1.    Application of the *O'Brien* Test

4   Under the *O'Brien* test,

5       [a] government regulation [of expressive conduct] is sufficiently

    justified if it is within the constitutional power of the Government; if it

6       furthers an important or substantial governmental interest; if the

    governmental interest is unrelated to the suppression of free

7       expression; and if the incidental restriction on alleged First

    Amendment freedoms is no greater than is essential to the furtherance

8       of that interest.

9   *O'Brien*, 391 U.S. at 376-77.  Here, §154 satisfies these four standards.

10  First, restrictions on public nudity are within the constitutional power of the City.  "The

11  traditional police power of the States is defined as the authority to provide for the public health,

12  safety, and morals," and has long been upheld as the basis for legislation.  *Barnes v. Glen Theatre,*

13  *Inc.*, 501 U.S. 560, 569 (1991); *see also  Hightower*, 2013 WL 361115 at *7.

14  Second, the Defendants have identified a number of substantial interests served by the

15  Ordinance that relate to the health, safety, and morals of the public.  *See* S.F. Police Code § 154(a)

16  (providing findings by Board of Supervisors that nudity causes traffic related "public safety hazards"

17  and an invasion of privacy of those "members of the public who are unwillingly or unexpected[ly]

18  exposed to [nudity]").

19  The third *O'Brien* factor – whether the government interest is unrelated to the suppression of

20  free expression – is satisfied; the ordinance regulates conduct regardless of its expressive nature.

21  *See Pap's A.M.*, 529 U.S. at 301.  As discussed, § 154 regulates nudity whether or not that nudity is

22  accompanied by expressive activity, and is thus unrelated to the suppression of free expression.  *Id.*

23  at 301 (explaining that an ordinance that "bans all public nudity, regardless of whether that nudity is

24  accompanied by expressive activity" is unrelated to the suppression of free expression).

25  The final *O'Brien* factor requires that the statute in question restrict First Amendment

26  freedoms no more "than is essential to the furtherance of [the state's] interest." *O'Brien*, 391 U.S. at

27  377.  This factor does not require the state to employ the least restrictive means to achieve its

28  interest.  *See Pap's*, 529 U.S. at 301-02 (plurality).  Rather, "so long as the neutral regulation

United States District Court

For the Northern District of California

promotes a substantial government interest that would be achieved less effectively absent the regulation" it is permissible under *O'Brien*.  *Rumsfeld v. Forum for Acad. & Instit. Rights, Inc.*, 547 U.S. 47, 67 (2006) (internal quotation marks omitted).

Here, Defendants' legitimate interest in protecting the unsuspecting passerby from nudity as well as the other stated interests would be achieved less effectively, indeed defeated, absent § 154's restriction on public nudity.  As such, § 154 passes the *O'Brien* test, and complies with the First Amendment's requirements.  Accordingly, the Court finds that the Plaintiffs cannot sustain their claims for restriction of speech based exclusively on Defendants' enforcement of § 154, and the Court **GRANTS** the Defendants' motion to dismiss these claims.

B.    Compelled Speech

The "right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all."  *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (citing *W.Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 633–34 (1943)); *see also Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,* 547 U.S. 47, 61 (2006) (stating that "freedom of speech prohibits the government from telling people what they must say").  The test of whether the state has violated an individual's right to refrain from speaking was annunciated by the Supreme Court in *Wooley*.  "[T]he test is whether the individual is forced to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable."  *Frudden v. Pilling*, 742 F.3d 1199, 1205 (9th Cir. 2014) (quoting *Wooley*, 430 U.S. at 721 (Rehnquist, J., dissenting) (quoting id. at 715 (majority opinion)).

Here, Plaintiffs contend that wearing clothing during their protests communicates a message of "body shame."  SAC ¶ 26.  The Court rejects this contention.  As the Ninth Circuit explained, "wearing clothing is not speech, and the mere act of wearing clothing does not express any message at all."  *Jacobs v. Clark County School Dist.*, 526 F. 3d 419, 438 (9th Cir. 2008).  Moreover, Plaintiffs do not plead any facts that suggest a "great likelihood" that a passerby would understand their clothing to express a message of body shame which Plaintiffs claim is the message of the allegedly compelled speech – as is required for conduct to constitute speech under the First

United States District Court

For the Northern District of California

1    Amendment.  *See Johnson*, 491 U.S. at 404.  Thus, Plaintiffs' claim that the Ordinance compels

2    speech fails.

3         Moreover, the Court notes that Plaintiffs' argument that being forced to wear clothing

4    compels speech is analytically indistinct from Plaintiffs' argument that the Ordinance's nudity ban

5    restrains their speech–and thus this argument must fail under *O'Brien* as well.  In short, because it is

6    constitutionally permissible to prohibit nudity at certain times and in certain places, is necessarily

7    constitutionally permissible to require clothing at those times and at those places.  Plaintiffs' attempt

8    to argue otherwise is unavailing.  As such, the Court finds that, under *O'Brien*, the Ordinance is

9    constitutional as applied to compelling clothing, and **GRANTS** Defendants' motion to dismiss this

10   claim.

11   C.    Right to Petition

12        In the Second Amended Complaint, Plaintiffs claim that Defendants have enforced the

13   Ordinance against them in retaliation for filing this lawsuit, which violates their right to petition.

14   SAC ¶ 27.  Plaintiffs have "agreed to withdraw" this claim.  *See* Opp' at 23.  In light of this

15   concession, the Court dismisses this claim.

16   D.    Impermissible Prior Restraint

17        Plaintiffs argue that Defendants application of the Ordinance constitutes an impermissible

18   prior restraint because (1) the Ordinance was enforced against them while engaging in expressive

19   conduct; and (2) the permitted event exception vests undue discretion in the hands of government

20   officials.  The Court addresses each in turn.

21        1.    Enforcement of the Ordinance

22        The doctrine of prior restraint does not apply to post-hoc enforcement of the law.  *See*

23   *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 553 (1975); *see also Cuviello v. City &*

24   *Cnty. of San Francisco*, 940 F. Supp. 2d 1071, 1084 n.5 (N.D. Cal. 2013).  Thus, the Court

25   determines that the Plaintiffs' first claim which is predicated on post-hoc enforcement (*e.g.*, through

26   citations) fails as a matter of law.

27

28

**United States District Court**
For the Northern District of California

2.      Permit Requirement Vests Undue Discretion In the Hands of Government Officials

"An ordinance requiring a permit . . . before authorizing public speaking, parades, or assemblies in . . . a traditional public forum, is a prior restraint on speech." *Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 130 (1992).  Such a prior restraint is presumptively invalid. *Id*.

However, a permitting requirement may overcome this presumption if two things are shown. First, the permitting requirement must be a content-neutral time, place, and manner restriction. *Thomas*, 534 U.S. at 323.  Second, the permitting requirement must contain "adequate standards to guide the official's decision and render it subject to effective judicial review."  *Id*.

Here, on its face the Ordinance meets both of these requirements.  First, as previously discussed, the Ordinance is a content-neutral time, place and manner restriction that regulates nudity regardless of expression.  *See Supra, O'Brien* discussion.  Second, it is undisputed that the Ordinance incorporates the permitting standards that are provided within the San Francisco Police Code (SFPC).[3]  The SFPC provides: "[t]he Chief of Police *shall* approve an application for a parade permit *unless*," and proceeds to enumerate specific grounds for denial of an application.[4]  San Francisco Police Code, Art. 4 §369 (emphasis added).  Moreover, SFPC §370-71 provide that upon denial of any application "the Chief of Police shall inform the applicant of the reason or reasons for the denial in writing" and such denial may be appealed "to the Committee on Parades."  These standards are "reasonably specific and objective, and do not leave the decision to 'the whim of the administrator.'"  *Thomas*, 534 U.S. at 324.  Plaintiffs' allegations of improper permit evaluation, while potentially linked to a claim for discriminatory enforcement, are not sufficient to make out a plausible claim that Article 4 of the SFPC vests undue discretion in the hands of government officials.  Thus, the Court **GRANTS** Defendants' motion to dismiss this claim as well.

---

[3] The Court takes judicial notice of Article 4 and section 154 of the San Francisco Police Code.  These selections are judicially noticeable because they are matters of public record.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) ("On a motion to dismiss, we may take judicial notice of matters of public record outside the pleadings").

[4] It is worth noting that each of the enumerated grounds for denial are content neutral, directly related to public safety and regulating competing uses of the public space, and are very similar to those approved of in *Thomas*.  *See supra* "Factual & Procedural Background" section.

**United States District Court**
For the Northern District of California

E.      Selective Enforcement Based On Viewpoint

"[D]iscriminatory enforcement of a speech restriction amount[s] to viewpoint discrimination in violation of the First Amendment.'"  *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998)).  Although the Ninth Circuit has often addressed "discriminatory enforcement" claims under the Equal Protection clause rather than the First Amendment, both claims may be available.  *Hoye v. City of Oakland*, 653 F.3d 835, 855 (9th Cir. 2011) ("We have made clear that such a claim is available, but have usually not categorized it as an "as-applied" First Amendment challenge").

Here, the Court finds that the facts alleged by the Plaintiff lend support to a plausible claim for discriminatory enforcement in violation of both the First Amendment and the Equal Protection Clause.

1.      First Amendment

"A restriction on speech is viewpoint-based if (1) on its face, it distinguishes between types of speech or speakers based on the viewpoint expressed; or (2) though neutral on its face, the regulation is motivated by the desire to suppress a particular viewpoint." *Moss II,* 675 F.3d at 1224. To prevail in a viewpoint discrimination claim, a plaintiff must establish that the government took action against it "*because of* not merely in spite of" its message.  *See Moss v. U.S. Secret Serv.,* 572 F.3d 962, 970 (9th Cir. 2009) (*Moss I* ).

Generally, a plaintiff demonstrates an intentionally discriminatory government action by reference to a "control-group," against which the plaintiff may contrast enforcement practices.  *See Hoye,* 653 F.3d at 855; *see also Rosenbaum v. City & Cnty. of San Francisco*, 484 F.3d 1142, 1153 (9th Cir. 2007).

Here, Plaintiffs' complaint provides three different control groups, consisting of publicly nude individuals involved in: Critical Mass, The World Naked Bike Ride, and the Naked Sword film-shoot.  SAC ¶¶ 73-78.  Plaintiffs allege that at all three of these San Francisco events, groups of people engaged in publicly nude conduct, in violation of § 154.  *Id.*  Plaintiffs further allege that none of these events sought to express an "anti- § 154" message and that at all three of these events, the SFPD were present but did not enforce the Ordinance.  *Id.*  By contrast, each time the Plaintiffs

engaged in nude conduct that expressed an "anti- § 154" message, the SFPD enforced § 154, issuing citations and detaining the Plaintiffs and their confederates. *Id.*

Further, Plaintiffs allege five separate instances in which it applied for parade permits, where their nude demonstrations could comply with the requirements of § 154, but the SFPD ignored their applications. SAC ¶¶ 42, 46, 49, 52, 61. Plaintiffs also allege that on two occasions, the SFPD denied their applications in a manner that deviated from SFPC §370-71. On one of those occasions, the SFPD refused to provide a written denial providing the reason for its denial. SAC ¶ 38. On another occasion, Plaintiffs allege that the SFPD provided a written denial stating that the parade permit was denied because "[p]ublic nudity violates SF Police Code 154." SAC ¶ 55. That rationale is not explicitly listed as an appropriate ground on which to deny a permit application. *See* San Francisco Police Code, Art. 4 §371.

Taken as true, the facts alleged show that each time that the Plaintiffs attempted to express an "anti- § 154" message through their nude conduct, the SFPD enforced the Ordinance against them. By contrast, the SFPD did not enforce the Ordinance against nude demonstrations that did not express an "anti- § 154" message. Moreover, the facts alleged indicate that the SFPD deviated from protocol in ignoring and denying the Plaintiffs' permit applications. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 270 (1977) (recognizing consistent deviation from policy can evidence discriminatory intent). Taken together and viewed in the light most favorable to the Plaintiffs, the Court determines that these facts lend support to a plausible inference that the SFPD took action against the Plaintiff "*because of* not merely in spite of" its anti- § 154 message. *See Moss,* 572 F.3d at 970. Thus, Plaintiffs have met their burden under *Iqbal*, and the Court **DENIES** the Defendants' motion to dismiss this claim.

### 2. Equal Protection Clause

Defendants argue that a claim for viewpoint discrimination must be analyzed exclusively under the Equal Protection Clause. Not so. Although generally viewed as arising under the Equal Protection clause, a claim for viewpoint discrimination is available under both the Equal Protection Clause and the First Amendment. *See Hoye*, 653 F.3d at 855 ("We have made clear that such [selective enforcement claims are] available, but have usually not categorized it as an 'as-applied'

First Amendment challenge."); *see also Menotti*, 409 F.3d at 1147 (categorizing a selective enforcement claim as an 'as-applied' challenge under the First Amendment).  As discussed above, Plaintiffs have adequately pled a First Amendment claim for selective enforcement.  Even if Plaintiffs' claim was analyzed under the Equal Protection Clause, that claim is adequately pled as well.

Selective enforcement of an otherwise valid law neutral as to speech violates the equal protection clause if it (1) has a discriminatory effect; and (2) is motivated by a discriminatory purpose.  *Wayte v. U.S.,* 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).

a.   <u>Discriminatory Effect</u>

A discriminatory effect is typically established by showing the plaintiff was treated unfavorably compared to others who are similarly situated. *See id.*  Groups may be found similarly situated if their conduct is of a comparable size and character relative to the law being enforced.  *Id.* (explaining that alleged control groups that do not distinguish between conduct that is "permitted / non-permitted" are not sufficiently similar).

Here, as noted, Plaintiffs have alleged three different groups that engaged in publicly nude conduct, that were treated favorably by the SFPD – *e.g.* the SFPD did not issue citations to members of those groups.  Two of the control groups alleged – participants in Critical Mass and World Naked Bike Ride – engaged in publicly nude bike riding.  SAC ¶¶ 73-76.  The third control group – participants in the "Naked Sword film shoot" – were shooting a film involving public nudity, and are not alleged to have been riding bikes.  SAC ¶ 77.  According to the Plaintiffs, each control group violated the ordinance in a prominent manner, by engaging in publicly nude conduct without a permit.  SAC ¶¶ 75-77.  As alleged, SFPD officers were present at each event and presumably aware of each control group's nude conduct.  *Id.*  For purposes of the anti-nudity ordinance, these groups are similarly situated to Plaintiffs; there is no obvious reason why other groups who violate the ordinance should not have been subjected to enforcement.  The Court finds that each of these groups engaged in sufficiently comparable conduct to the Plaintiffs' alleged protests outside of City Hall on February 1 and March 22 of 2013.

1    Defendant argues that the control groups alleged are not similarly situated under *Rosenbaum*.

2   This argument is unpersuasive.  In *Rosenbaum* the control groups at issue were rejected because

3   they  had permits which excepted their conduct from the general ordinance.  *Rosenbaum,* 484 F.3d at

4   1154.  Thus, the Ninth Circuit explained that for the purposes of showing discriminatory

5   enforcement of the ordinance, the control groups were not similarly situated to the plaintiffs, who

6   did not have such permits.  *Id.*  Here, by contrast, Plaintiffs' control groups, like Plaintiffs

7   themselves, are alleged to have been unpermitted.  Thus all groups were subject to the same

8   requirements of Section 154.  Thus, the Court finds the control groups are sufficiently similarly

9   situated, and *Rosenbaum* is inapposite[5].

10    Accordingly, the Court finds that Plaintiffs have alleged others were sufficiently "similarly

11   situated" in respect to the ordinance in question but treated favorably by the SFPD compared to

12   Plaintiffs.  Thus, Plaintiffs have carried their burden of alleging facts that support a plausible

13   "discriminatory effect" of the SFPD's enforcement of § 154.

14                    b.    Discriminatory Purpose

15    To plead discriminatory purpose, a plaintiff must allege facts that support a plausible claim

16   that "the decision-maker ... selected or reaffirmed a particular course of action at least in part

17   'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Wayte,* 470

18   U.S. at 610.  As discussed above, Plaintiffs' allegations meet this burden; the allegations raise a

19   sufficient inference of viewpoint based discrimination directed at Plaintiffs.  *See supra* Discussion of

20   First Amendment, Discriminatory Enforcement claim.

21    Having found that the Plaintiffs have sufficiently alleged both a "discriminatory effect" and a

22   "discriminatory purpose," the Court **DENIES** Defendants' motion to dismiss Plaintiffs'

23   discriminatory enforcement claim under the Equal Protection Clause.

24

25   _____

26    [5] Defendants' argument seems to rely on the Ninth Circuit rejection of Rosenbaum's other

27   control group, which was rejected because of its differentiated size.  *Rosenbaum,* 484 F.3d at 1154.
However, that control group was relied on by Rosenbaum for his claim that the police discriminated

28   against him in issuing of permits, and *not* in his claim that the police enforced the ordinance in a
discriminatory manner.  *Id.*

1   As to Plaintiffs' request for injunction, the Court finds that Plaintiffs do not have standing to

2 seek such relief, and thus the portion of the prayer in the complaint is dismissed.  For the purposes of

3 requesting injunctive relief, a party does not have standing unless it is able to show a "real or

4 immediate threat that [it] will be wronged again."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111

5 (1983).

6   Here, Plaintiffs have not alleged that there is any threat that their expressive nude conduct

7 will be restrained again.  As noted above, it is unlikely that their nudity at this point will constitute

8 expressive conduct protected by *O'Brien* – Plaintiffs' nudity only constitutes expressive conduct

9 when temporally proximate to the passage of §154.  Accordingly, there is no likelihood of a further

10 First Amendment violation.  *Id.*  ("absent a sufficient likelihood that [it] will again be wronged in a

11 similar way, [plaintiff] is no more entitled to an injunction than any other citizen").

12   The Court therefore finds Plaintiffs lack standing to seek injunctive relief and dismisses that

13 claim.  *See Id.*; *see also O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) ("we doubt that there is

14 sufficient immediacy and reality to respondents' allegations of future injury to warrant invocation of

15 the jurisdiction of the District Court").

16 F. <u>Vagueness Challenge</u>

17   Plaintiffs initially argued that the Ordinance was unconstitutionally vague because it failed to

18 provide adequate definitions for the terms "fair" and "festival."  Plaintiffs have since conceded that

19 argument.  Opp' at 24.  However, Plaintiffs maintain that the permitted events exception to the

20 Ordinance is unconstitutionally vague – as-applied – because (1) it does not provide sufficient

21 clarity as to how the beginning and ending of a permitted event should be determined; and (2) the

22 San Francisco Police Department applied the Ordinance in a vague or confusing manner.  *Id.*

23   As a threshold matter, there is no analytic or legally operative distinction between an as-

24 applied vagueness challenge and a facial vagueness challenge.  *Goguen v. Smith*, 471 F.2d 88, 94

25 (1st Cir. 1972) aff'd, 415 U.S. 566 (1974).  In *Gougen*, a plaintiff challenged a Massachusetts flag

26 desecration statute, as it was applied to his sewing a small American flag into the left buttock of his

27 jeans.  *Id.* at 91.  The *Gougen* court explained that the analysis of a vagueness challenge is the same

28 regardless of whether the claim is plead as a facial or as-applied challenge.  *Id.* at 94.  In either case,

the inquiry is: does the statute itself provide adequate notice of what the state commands or forbids. *Id.* (citing *Papachristou v. City of Jacksonville,* 405 U.S. 156, 161 (1972)).

Here, it is undisputed that the Ordinance does not forbid nudity at permitted events.  It is also undisputed that the Ordinance "incorporated the existing permitting regime" of the San Francisco Police Code, and thus incorporated the regulations governing San Francisco event permits.  Opp' at 20.  As is the nature of event permits, they are highly specific as to when they take effect and expire. It is undisputed that this information is readily available, and Plaintiffs have not alleged any facts that would indicate otherwise.  Thus, the Ordinance provides sufficient notice of when nudity is forbidden, and is not unconstitutionally vague.

Plaintiffs' argument that the Ordinance is unconstitutionally vague because the SFPD enforces it in manner that is vague or confusing is unavailing.  As the Supreme Court explained,  the vagueness doctrine "requires *legislatures* to set reasonably clear guidelines for law enforcement officials ... to *prevent* 'arbitrary and discriminatory enforcement.'"  *Smith v. Goguen*, 415 U.S. 566, 573 (1974) (emphasis added).  Thus, while vague or confusing enforcement practices may provide evidence of an impermissibly vague statute, it cannot create one.  Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' claim that § 154 is unconstitutionally vague – as applied or otherwise.

## IV.    CONCLUSION

To summarize:

(1)    The Court **GRANTS** Defendants' motion to dismiss Plaintiffs' claims that the Ordinance, as applied, violates their First Amendment rights because it (a) restricts core political speech; (b) compels speech; (c) infringes upon their right to petition and (d) acts as an impermissible prior restraint.

(2)    The Court **DENIES** Defendants' motion to dismiss Plaintiffs' claim that the Ordinance violates their First and Fourteenth Amendment rights because the SFPD enforced the Ordinance in a viewpoint discriminatory manner when it restrained Plaintiffs' protest outside of City Hall on both February 1 and March 22 of 2013.

(3)     The Court **GRANTS** Defendants' motion to dismiss Plaintiffs' claim that the
Ordinance, as applied, is unconstitutionally vague.

This order disposes of Docket No. 86.

IT IS SO ORDERED.

Dated:  December 24, 2014

_____
EDWARD M. CHEN
United States District Judge